## AMERICAN PATENTS DEVELOPMENT CORPORATION v. CARBICE CORPORATION OF AMERICA.

District Court, E. D. New York.   April 21, 1928.

No. 3119.

1. **Patents** ⬤⟿328—1,595,426, claims 2, 3, 4, 6, 7, and 9, for refrigerating apparatus, using solid carbon dioxide, held not infringed.

Patent No. 1,595,426, claims 2, 3, 4, 6, 7, and 9, issued to Thomas B. Slate, for refrigerating apparatus involving use of solid carbon dioxide as refrigerant, held, not infringed, since such patent did not authorize monopoly in manufacture and sale of solid carbon dioxide as refrigerant.

2. **Patents** ⬤⟿259(2)—Furnishing solid carbon dioxide does not infringe patent for refrigerating apparatus, using it, since solid carbon dioxide is not patentable.

Where patent for refrigerating apparatus is for combination, one element of which is solid carbon dioxide, defendant does not infringe by furnishing solid carbon dioxide, since that is perishable product, consumed in operation, which patentee could not patent, in view of prior use.

In Equity.   Patent infringement suit by the American Patents Development Corporation, substituted for the International Patents Holding Corporation and the Dry

Ice Corporation, against the Carbice Corporation of America. Complaint dismissed.

Charles Neave, George C. Dean, and Clarence D. Kerr, all of New York City, for plaintiff.

Darby & Darby and Samuel E. Darby, Jr., all of New York City, for defendant.

CAMPBELL, District Judge. This is an action in equity in which plaintiff charges the defendant with the infringement of patent No. 1,595,426, issued to Thomas B. Slate, for refrigerating apparatus, dated August 10, 1926; an earlier patent, No. 1,511,306, issued to said Slate, for improvement in methods of an apparatus for refrigeration and preserving perishable products, dated October 14, 1924, having been withdrawn from suit on the opening of the trial.

Defendant offers the defenses of invalidity and noninfringement.

Plaintiff bases this suit on claims 2, 3, 4, 6, 7, and 9 of patent No. 1,595,426, which read as follows:

"2. A heavily insulated package inclosing in close proximity to a parcel or mass of material not damaged by overfreezing during shipment, a quantity of frozen carbon dioxide insulated from, but in freezing relation to, said parcel or mass, so that portions of the material are more directly and intensely refrigerated than other portions, for the purpose and with the result of sufficiently refrigerating more remote portions, whereby, on absorption of heat through said insulation, said carbon dioxide passes directly from the solid to the gaseous state, and said gas, as formed, escapes in freezing and insulating relation to said materials.

"3. A transportation package, consisting of a vented protective casing of insulating material inclosing a quantity of frozen carbon dioxide sufficient to afford refrigeration for the desired period and a quantity of freezable product in freezing proximity to said carbon dioxide and the gas evaporated therefrom, and arranged so that said frozen carbon dioxide is less accessible for exterior heat than said freezable products.

"4. A protective casing of insulating material having therein a quantity of frozen carbon dioxide sufficient to afford refrigeration for the desired period and a quantity of freezable product separated from, but in freezing proximity to, said frozen carbon dioxide and insulated by the gas evaporated therefrom."

"6. A transportation package, consisting of a protective casing of insulating material having packed therein a quantity of frozen carbon dioxide in an insulating container and a quantity of freezable product in freezing proximity to said frozen carbon dioxide and the gas evaporated therefrom, arranged so that said frozen carbon dioxide is less accessible for exterior heat than said freezable products.

"7. A transportation package, consisting of a vented protective casing of insulating material having packed therein a quantity of freezable product in freezing proximity to a quantity of frozen carbon dioxide sufficient to afford the desired amount of refrigeration."

"9. An insulated shipping case, similar parcels of perishable products packed solidly in said case, surrounding and supporting an insulated container of frozen carbon dioxide, having dimensions corresponding to and fitting among the said parcels."

To me this suit appears to be an attempt on the part of plaintiff to do by indirection what it could not do directly, viz. obtain a monopoly in the manufacture and sale of solid carbon dioxide as a refrigerant, which the patentee did not discover, nor has he a patent for it specifically. No process or method is claimed nor is one described in the patent in suit. What is enumerated in the claims in suit is a refrigerating apparatus, material to be refrigerated, and frozen carbon dioxide as a refrigerant.

Plaintiff does not make nor sell, nor has it licensed any one to make, the refrigerating apparatus claimed in the patent in suit. All that plaintiff or defendant does is to manufacture and sell solid or frozen carbon dioxide, the chemical symbol of which is $CO_2$.

Plaintiff does not and cannot claim to be the discoverer of solid carbon dioxide. Since 1845, solid carbon dioxide has been known to be one of if not the coldest elements ordinarily met with and having a temperature of 148°. It was also known, long before the earliest date with which we are here concerned, that solid carbon dioxide could be pressed into solid blocks; that when exposed to the atmosphere it sublimed—that is, it went into a gaseous state without passing through the liquid state, very slowly; and that, notwithstanding its extremely low temperature, its evaporation caused the formation of an insulating layer of gas around the solid, which permitted it to be touched without danger.

With this knowledge, its use as a refrigerant was naturally and logically suggested. This clearly appears from the prior art, British patents No. 13,684, of 1891, to Tichborne, Darley, Geoghegan, and Purcell,

for an improved process and apparatus for the manufacture of solid carbonic acid, and 7,436, of 1895, to Elworthy and Henderson, for improvements in methods of solidifying carbon dioxide; United States patent No. 579,866, to Elworthy, for apparatus for solidifying carbon dioxide, issued in 1897; French patent No. 333,181, to Crepin, for device for preserving foodstuffs and the like by means of cold produced by carbonic acid, issued in 1903, and 344,957, to Heyl & Co., for method for storing and shipping carbonic acid in solid state, issued in 1904; British patent No. 2,450 of 1906, to Elworthy, for improvement in processes for solidifying carbonic acid and apparatus therefor—and from the following publications offered in evidence: Liquid Air, Sloane, 1900; Dictionary of Applied Chemistry, Sir Edward Thorpe, 1921; Laboratory Text-Book of General Chemistry, Pellew, 1901; The Journal of the Society of Chemical Industry, 1892 and 1904; Treatise on Chemistry, Roscoe & Schorlemmer, 1898 and 1920; Spons' Encyclopaedia of the Industrial Arts, Manufactures, and Commercial Products, 1879; Outlines of Chemistry, William Odling, 1870; Chemical Lecture Experiments, Newth, 1892; Elements of Chemistry, Graham, 1850; Dictionary of Chemistry, New Edition, Thomson, 1845-1850; Dictionnaire de Chimie, Wurtz, 1876; Berichte, 1884, Artificial Refrigeration, 1891.

There are certain inherent characteristic and physical properties of solid carbon dioxide, among which are the evaporation or changing of its state from the solid form to the gaseous state when exposed to the atmosphere, which change inevitably creates a surface layer of gas around the solid block of gaseous carbon dioxide; that carbon dioxide will permeate through any space or material with which it comes in contact unless the material be air-tight and impervious to air or other gas; and that carbon dioxide in a gaseous state acts to some extent as a preservative. United States patent No. 256,- 299, to Dickerson, for process of refrigerating and preserving meat and other articles, issued in 1882.

In fact all that we know to-day about solid carbon dioxide pertinent to this suit, except perhaps its higher ratio of refrigeration as compared to water ice, was known many years prior to any date with which we are here concerned; and even if it has been found that such ratio is higher than 2 to 1, it is because of the inherent properties of the solid carbon dioxide, and not something which results from any improvement in manufacture by the plaintiff, or the teachings of the patent in suit.

What is the patent for? It is not for a method or process. Plaintiff contends that the thing claimed is a package, goods baled, boxed, or otherwise inclosed for transportation, and that the manufacture of this package is packing the ice cream and the frozen carbon dioxide in the novel relation specified in the patent, and that such a package is an article of manufacture, within the meaning of the patent statute. Defendant contends that the patent is for a container.

[1] In my opinion the defendant is correct, and no infringement was shown, because at most defendant could only be a contributory infringer, and to sustain such a charge it would have been necessary to show that defendant contributed materials going into the construction of the container, and such charge would not be sustained by showing that commodities were used in the container. Assuming, but not finding, that the patent in suit was for a combination comprising the refrigerating apparatus, materials to be refrigerated, and frozen carbon dioxide as a refrigerant, there was no infringement shown.

The use of solid carbon dioxide as the refrigerant restricted the materials to be refrigerated to materials that would not be injured by freezing, such as ice cream, and, if plaintiff is correct in its contention that the furnishing of the refrigerant by the defendant to Marchiony constituted infringement, then it could as well claim that the furnishing of the materials to be refrigerated was an infringement. Neither of these contentions can be sustained, because both the refrigerant and the materials to be refrigerated are perishable, and in each operation the refrigerant is consumed.

[2] Even if it be held that the patent in suit is for a combination, one element of which is solid carbon dioxide, the defendant did not infringe the patent in suit by furnishing the solid carbon dioxide, as that was a perishable product, consumed in the operation, and the patentee has not patented and could not patent solid carbon dioxide. Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500.

The case at bar is clearly distinguishable from Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 325, 330, 333, 335, 29 S. Ct. 503, 53 L. Ed. 816, in which case the phonographic disc record was not consumed in the operation, and in that sense was not perishable.

It is no answer for the plaintiff to con-

tend that the protective casing of the package may not be of a character which would make it worth retaining, because the patent would read on one which would, and the shipping cases clearly are made in a substantial manner, with the intention of retaining them.

In any event, defendant did not supply protective casings or shipping cases, nor did it direct the purchaser of its product where to purchase the same, but the containers used by Marchiony, in the first instance, were purchased where plaintiff told him, and thereafter in connection with the solid carbon dioxide furnished by plaintiff and defendant were purchased where and from whom he found it most advantageous, changing the source of his supply at will, without ever obtaining the consent of the plaintiff, and that such consent was not necessary.

The containers thus purchased by Marchiony were for a short period of time used in connection with the solid carbon dioxide of the plaintiff and defendant, he dividing his business between them, and therefore, by the purchase of the containers under such conditions, Marchiony had a license from plaintiff to use them.

No consideration of the validity of the patent is required, as I am convinced that, even if the patent be valid, infringement has not been shown.

A decree may be entered, dismissing the complaint, with costs.