RADIO CORPORATION OF AMERICA et al.
v. MAJESTIC DISTRIBUTORS,
Inc. (two cases).
Nos. 2076, 2077.

District Court, D. Connecticut.
Oct. 1, 1931.

Fish, Richardson & Neave and Stephen H. Philbin, all of New York City, for plaintiffs.

Edwards, Bower & Pool and Clifton V. Edwards, all of New York City, for defendant.

THOMAS, District Judge.

Both cases are patent infringement suits. In its answer in both cases the defendant sets forth in paragraph 14 in No. 2076, and in paragraph 18 in No. 2077, the following allegations: "The defendant further answering the said bill of complaint avers that plaintiffs have no standing in a Court of Equity in this case because plaintiffs are parties to agreements which form an unlawful combination in restraint of trade contrary to the statutes of the United States and because plaintiff, Radio Corporation of America, derives its alleged titles and rights from the provisions of said illegal agreements."

The plaintiffs filed motions to strike from the record paragraph 14 in No. 2076 and paragraph 18 in No. 2077, "on the ground that said answer sets up no defense to the bill

of complaint, and is irrelevant, immaterial, and superfluous." At the conclusion of the oral argument both motions were denied.

Shortly thereafter the plaintiffs filed a motion for rehearing, which was granted and counsel were requested to file briefs in support of their respective contentions and this they have done.

Subsequently, and on May 31st, defendant moved in each case to amend its answer "by adding thereto the following paragraph"; in No. 2076, paragraph 15, and in No. 2077, paragraph 19. These paragraphs are substantially alike and read as follows: "The defendant further answering the said bill of complaint avers that plaintiffs have no standing in a court of equity in this case and are not entitled to relief; because plaintiffs are employing some or all of the patents in suit to attempt, without sanction of law, to secure a monopoly of unpatented material and are unlawfully employing some or all of the patents in suit as an instrument for restraining commerce; because by the unlawful assertion of an apparent patent monopoly plaintiffs have with much advantage to themselves and much injury to others unlawfully deterred others from legitimate action and seriously prejudiced the rights of the public; because the agreements, the existence of which is alleged in paragraph 14 of the bill of complaint, although purporting to be license agreements under the patents in suit are in fact unlawful agreements and combinations in restraint of trade by which plaintiffs herein have agreed not to compete with each other in specified fields of activity contrary to the statutes of the United States therefor made and provided, and because plaintiffs have used some or all of the patents in suit and said agreements illegally and wrongfully to intimidate, terrorize and frighten others from entering said specified fields of activity."

As asserted by counsel for defendant, the purpose of filing this amendment was to "bring the allegations of paragraphs 14 and 18 respectively, that are already in the answer more closely in conformance with the recent decisions of the Supreme Court * * * in the Ensten and Carbice Cases." Louis H. Ensten & Lion Knitting Mills Company, Petitioners, v. Simon, Ascher & Co., Inc., Respondent, decided February 2, 1931, 282 U. S. 445, 51 S. Ct. 207, 75 L. Ed. 453; Carbice Corporation of America, Petitioner, v. American Patents Development Corporation and Dry Ice Corporation of America, decided March 9, 1931, 283 U. S. 27, 51 S. Ct. 334, 75 L. Ed. 819.

It seems clear that by these allegations pleaded in defense, the defendant denies the plaintiffs' right to equitable relief and desires to show that plaintiffs are using unlawfully the various patents set forth in the bill, and, if so proven, that they are entitled to no relief in a court of equity. To this claim the plaintiffs assert with vehemence that such allegations are no defense in a patent infringement suit, however true the allegations may be, and that their motions to strike must be granted in view of a long line of decisions. They argue that to deny these motions and thus inject wholly immaterial but tremendously important issues of whether the acts and agreements of the General Electric Company, the American Telephone & Telegraph Company, and the Radio Corporation of America have violated the anti-trust laws of the United States (15 USCA §§ 1, 3), would result in many months of trial and in a travesty on justice; that it would enable the defendant to continue appropriating the patent property of the plaintiffs for many years while the case is pending, and that the patent suit would be obscured by the enormous mass of testimony and exhibits relating to the agreements of the plaintiffs, and that it is all wholly irrelevant, as no defense can be based on such evidence to the plaintiffs' charge that the defendant infringes the patents in suit.

All of these claims made by plaintiffs are interesting, but lack legal force because the motions raise questions of law only, and whether the trial be long or short, or whether the patent feature of the case would or would not be obscured, cannot be and must not be considered as of any weight, much less of controlling the decision to be reached on these motions.

It is well settled by a long line of decisions that it is no defense to a bill for alleged infringement of a patent that plaintiffs have entered into a combination or conspiracy among themselves or with third parties to violate the anti-trust laws of the United States. Johns-Pratt Co. v. Sachs Co. (C. C.) 176 F. 738; Lovell-McConnell Mfg. Co. v. Bindrim (C. C. A.) 219 F. 533; Radio Corporation of America v. Lehr Auto Supply Co. (C. C. A.) 29 F.(2d) 162; Western Electric Co. et al. v. Wallerstein (D. C.) 48 F.(2d) 268, decided by Judge Hazel in the Western District of New York on August 21, 1930; Western Electric Co. v. Pacent Reproducer Co. et al. (D. C.) 53 F.(2d) 639, decided by Judge Coleman in the Southern District of New York on December 22, 1930; Brown Saddle Co. v. Troxel (C. C.) 98 F. 620; Cimiotti

Unhairing Co. v. American Fur Refining Co. (C. C.) 120 F. 672; Bonsack Machine Co. v. Smith et al. (C. C.) 70 F. 383; Otis Elevator Co. v. Geiger (C. C.) 107 F. 131; American Soda-Fountain Co. v. Green (C. C.) 69 F. 333; Independent Baking Powder Co. v. Boorman (C. C.) 130 F. 726; Motion Picture Patents Co. v. Ullman (C. C.) 186 F. 174; U. S. Fire E. C. Co. v. Joseph Halsted Co. (D. C.) 195 F. 295; Weyman-Bruton Co. v. Old Indian Snuff Mills (D. C.) 197 F. 1015; General Electric Co. v. M. E. L. Co. (D. C.) 10 F.(2d) 851.

Counsel for defendant, cognizant of these decisions, nevertheless asserts that the question here presented is radically different, inasmuch as in those adjudications the answer pleading unlawful restraint was interposed against the owner of the patent and not against the licensees who had obtained their licenses through an illegal contract by virtue of which they became parties plaintiff. And so the question here presented is whether, assuming the truth of all the allegations pleaded in paragraph 14 in No. 2076 and in paragraph 18 in No. 2077, the defendants can avail themselves of the illegality pleaded.

I am now inclined to the views expressed by Judge Coleman in the Pacent Case, supra:

"It must be assumed that they are trespassers and are violating the rights of both the patent owner and any exclusive licensee. As to the patent owner, the law is well settled that an infringer cannot defend upon the ground that the plaintiff acquired his title illegally and for the purpose of carrying out a conspiracy in restraint of trade. * * *

"The rights which the exclusive licensees are seeking to enforce against trespassers arise out of the contract in about the same way as a patent owner's rights against infringers arise out of a title illegally acquired. * * * In neither instance should the infringer be exempt from liability because of illegality which does not affect him individually."

It is perfectly clear that between these plaintiffs they have title to the patents in suit and so the issues become the ordinary issues of validity and infringement. If the defendant could plead some equity *special to itself* and not *generally* a violation of certain laws of the United States, not affecting title but merely in connection with the use made of the patents, we would have a different question presented. The situation here, it seems to me, is quite analogous to a case where A sues B for injunction to restrain B's continuing to trespass upon A's land and B pleads as a defense that A is using his land in violation of law by maintaining a brewery thereon, and that in addition to being a violation of law, the brewery constitutes a common-law nuisance to the general public. Such a defense would, obviously, have to be stricken out.

As I view these defenses now, and after very careful consideration and research of the cases relied upon by both sides, it seems clear that the issues which the defendant now seeks to inject into the case concern only the United States or the public generally and are appropriately being litigated in a proper proceeding brought by the United States in the District Court of Delaware, as is shown by Defendant's Exhibit B, which is a photostatic copy of a bill in equity filed by the United States Attorney General in the District Court of Delaware in which the United States seeks a decree adjudging that these plaintiffs, and others, are a combination, or in a conspiracy, in restraint of trade in radio communication and radio apparatus in violation of the anti-trust laws of the United States, and that the contracts among those defendants be declared void, as well as various other relief. In that suit, it seems to me, the issues attempted to be raised here should be litigated, and not in this patent suit.

The defendant lays great stress upon the very recent decisions of the Supreme Court of the United States referred to, supra, as giving complete support to his contentions so ably presented on this motion in a brief replete with persuasive and ingenious argument. But a careful study of the Ensten Case, cited and relied upon by defendant as indicating a change in the law to the effect that such a defense as is here offered is now open to a defendant in a patent suit, shows that the Ensten Case has no relevancy to the issue raised by these motions.

The Carbice Case, however, deserves not only analysis but careful thought in order to decide whether it supports defendant's contentions. The opinion of Judge Campbell of the Eastern District of New York, 25 F.(2d) 730, fails to state either the facts or the act claimed to constitute infringement. These appear, however, in Judge Swan's opinion, 38 F.(2d) 62, when the case was before the Circuit Court of Appeals. It appears that the plaintiffs were American Patents Development Corporation, owner of the patent by assignment, and Dry Ice, a licensee. The defendant, Carbice Corporation of America, was a manufacturer of solid carbon dioxide. The patent covered an insulated package en-

closing a quantity of frozen carbon dioxide, insulated from but in freezing relation to a parcel or mass of material consisting of perishable products. This is a very general statement of the claims which appear in Judge Campbell's opinion. 25 F.(2d) 730. In Judge Swan's opinion it appears that the defendant was charged with contributory infringement in persuading a former customer of Dry Ice Corporation to purchase defendant's carbice with the intent that the customer would use it in making the patented package which the customer did. Judge Campbell says that the suit appears to be an attempt on the part of the plaintiff to do by indirection what it could not do directly, viz., to obtain a monopoly in the manufacture and sale of solid carbon dioxide as a refrigerant. In his decision he limited the scope of the patent to the container and held that the carbon dioxide furnished did not go into the construction of the container, and that there could be no contributory infringement any more than there would be contributory infringement by selling the ice cream which was placed in the container. Furthermore, that if the patent was for a combination, one element of which was solid carbon dioxide, the defendant did not infringe by furnishing the solid carbon dioxide as that was a perishable product consumed in operation which the patentee could not patent in view of its prior use. The Circuit Court of Appeals reversed the decision below, extending the scope of the patent, and found that there was no reasonable doubt about the defendant's complicity in the infringement.

The Supreme Court of the United States, reversing the Circuit Court of Appeals, 283 U. S. 28, 51 S. Ct. 334, 75 L. Ed. 819, held, however, as plainly stated in the syllabus, that one who supplies unpatented materials to a licensee to be used in disregard of an unlawful condition is not liable to the patentee as a contributory infringer. The unlawful condition was that the patented article should be used only for the consumption of the unpatentable dry ice sold by the plaintiff.

This decision, as I read it, has no bearing upon the right of an owner of a patent to sue for its infringement. It simply holds, in effect, that Carbice did not infringe. Carbice was not charged with direct infringement but only contributory infringement. It could not be guilty of contributory infringement otherwise than by aiding the licensee to violate a condition attached to the license. The condition was manifestly void and so there could be no contributory infringement. I there-fore conclude that the Carbice decision bears no relation to the issues raised by these motions.

Concluding, therefore, that the allegations contained in paragraphs 14 and 18, as well as the amendments which are allowed, are irrelevant to the cause of action set forth in the bills of complaint, it follows that the plaintiffs' motions to strike them out are granted.

Submit order accordingly.