**VAN KANNEL REVOLVING DOOR CO. v. GENERAL BRONZE CORPORATION**

(two cases).

Nos. 6967, 6997.

District Court, E. D. New York.

March 15, 1934.

Munn, Anderson, Stanley, Foster & Liddy and T. Hart Anderson, all of New York City (Orson D. Munn and Daniel H. Kane, both of New York City, of counsel), for plaintiff.

Moses & Nolte, of New York City (Charles Neave and Edmund Quincy Moses, both of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

By consent the two suits were tried together.

They are based on the alleged infringement by the defendant of the following patents. The title to each is in the plaintiff.

The first action is based upon patent No. 1,890,365, issued to Robert L. Blanchard, assignor to Van Kannel Revolving Door Company, the predecessor of the plaintiff herein, for full collapsible panic proof revolving door, granted December 6, 1932, on an application filed February 26, 1931.

The second action is based upon patent No. 1,514,851, issued to Frank L. Gormley, for speed control for revolving doors and the like, granted November 11, 1924, on an application filed January 21, 1924, and assigned by mesne assignments to the plaintiff.

The plaintiff is a New Jersey corporation, having a regular and established place of business in the borough of the Bronx, city of New York, and the defendant is a New York corporation, having a regular and established place of business in the borough of Queens, city of New York.

The defendant has interposed an answer in each of the actions, setting up the twofold defenses of invalidity and noninfringement, and in the second action the defense of unclean hands.

The defendant within the jurisdiction of this court, since the date of the patent to Blanchard, No. 1,890,365, and prior to, at the time of, and since, the filing of the bill of complaint in the first action, has manufactured, constructed, offered for sale, and sold, revolving doors embodying and containing the construction shown in the photostats Exhibits 3 and 4 herein, and the defendant within the jurisdiction of this court, since the date of the patent to Gormley, No. 1,514,851, and prior to, at the time of, and since, the filing of the bill of complaint in the said second action, has manufactured, constructed, offered for sale, and sold, revolving door constructions embodying and containing a speed control device, as shown in the photostat Exhibit 7 herein.

Plaintiff is an old and large manufacturer of revolving doors.

Defendant is engaged in the manufacture and installation of architectural bronze work in buildings, and its efforts in the manufacture of revolving doors have been confined to within about the last two years, prior to which time the defendant purchased revolving doors, which it installed, from the plaintiff and its predecessor and others.

The reason assigned by the defendant for engaging in the manufacture of revolving doors being that it could not secure revolving doors from the plaintiff at what were considered by the defendant as reasonable prices.

This reason, of course, would not relieve the defendant from infringement.

The defendant's contention that plaintiff has harassed the trade was not sustained.

The successful litigations by plaintiff, in which patent No. 656,062 was universally sustained, and reissue patent No. 14,255 was also sustained, are simply evidence that plaintiff was active in protecting its rights as the owners of such patents against infringers.

The evidence does not justify the defendant's contention that plaintiff has a virtual monopoly in the revolving door business, but, if it did have such a monopoly, that would not relieve the defendant of its responsibility for infringement. United States Fire Escape Counterbalance Co. v. Joseph Halsted Co. (D. C.) 195 F. 295; Motion Picture Patents Co. v. Ullman (C. C.) 186 F. 174; Western Electric Co. v. Wallerstein (D. C.) 48 F.(2d) 268; Radio Corporation of America v. Majestic Distributors (D. C.) 53 F.(2d) 641.

For convenience I will consider the patents in their order.

*Patent No. 1,890,365 to Blanchard, the first patent in suit.*

The patent is described on its face as for a "Full Collapsible Panic Proof Revolving Door."

A panic proof revolving door is one whose door wings will all fold in one direction, like the leaves of a closed book, without conscious manipulation on the part of a crowd seeking egress from a building, but merely in response to abnormal pressure applied to opposing door wings.

The patentee in his specification describes his invention as follows: "This invention relates to revolving doors, and has particular reference to certain improvements in that class of revolving doors known as the full collapsible panic proof type, in which the several wings thereof are capable of movement from their normal radial relation, under excessive or abnormal pressure, to positions where they project from one side of a central support and are disposed approximately in parallel planes." Page 1, lines 1 to 10.

He then calls attention to the fact that there have been effective and defective revolving door structures, all of which are comparatively complicated and expensive to produce and assemble, and states it to be the object of his invention to overcome those objections by means of a comparatively simple and inexpensive structure.

He further says:

"The present invention broadly aims to provide a revolving door structure of the indicated type which includes a central rotary support or shaft and a plurality of door leaves, an improved means for supporting and guiding said leaves whereby they may be disposed in normal radial relation to said central shaft or support and in which said means permits of their movement on successively different axes to a fully collapsed position wherein all of the leaves are in substantially parallel planes to each other or practically any other arrangement which may be assumed by the leaves of this class of doors.

"More particularly, the invention resides in an improved means for supporting the door wings from, connecting the same with, and guiding said leaves for movement with respect to a rotary central support or shaft, in which use is made of an element movable with and disposed perpendicular to said central support or shaft and in which said element and each door wing are provided with axially extending interengaging recessions and projections serving to permit each door wing to swing successively on relatively different axes." Page 1, lines 26 to 51.

The structure illustrated in the patent is as follows:

A central rotatable spindle or shaft A is provided with a pair of disks 10, secured to the spindle near the upper and lower ends respectively. The four door wings B, C, D, and E are supported by the disks so as to be held normally in radial position, and so that, when normal pressure is applied to any one of the wings, the disks, the four wings, and the spindle will rotate together. If excessive pressure be applied in opposite directions to two wings, the wings will pivot or swing on the disks in the direction of pressure to assume the position shown in Fig. 3. A three-point connection is provided between each of the wings and each of the disks, comprising the two pins 22 and pin 21 mounted on the wing and interengaging with communicating guideways on the disk defined by the edges 16, 19, and 20. If a wing be collapsed, it pivots for a short distance upon the pin 21, the pins 22 sliding circumferentially in the guideway defined by the edges 19 and 20. When one of the pins 22 reaches the end 17 of its guideway, the door wing ceases to pivot on the pin 21 and pivots then on the pin 22, disposed in the end 17 of the guideway; the pin 21 and the member 16 serving as guides for the pivoting. When the wing is collapsed in one direction, it will pivot on one pin 22, and, when it is collapsed in the other direction, it will pivot on the other pin 22. In either direction the

pin 21 will, in co-operation with the slot 16, serve as a guide for the pivoting on pins 22. The initial pivoting, when the wing is collapsed in either direction, is on the pin 21; the pins 22 sliding circumferentially in the groove formed between the members 19 and 20. However, only a minor proportion of the pivoting is on the pin 21; the principal pivoting being on either one of the pins 22, depending upon the direction in which the wing is collapsed. The pins 21 and the ends 17 of the circumferential grooves are eccentrically placed with respect to the central shaft A, and the two guide walls 16 are arcs described from the two pivotal points 17, respectively. To hold the wings in normal radial position, a spring-pressed detent 26 is secured in each door wing, and it engages in a keeper opening or recess 29 formed in the periphery of the disk 10.

Claims 4, 6, 12, 13, 14, 15, 16, 17, and 18 are involved in the present suit.

I cannot say that any of the claims is typical of them all, but claim 17, which reads as follows, well illustrates the invention: "17. In a revolving door structure, a central supporting member, means secured to said member for supporting the door wings, members carried by each door for engaging the said supporting means for connecting the wings thereto for pivotal movement, each wing being collapsible in one direction by swinging movement on one member and collapsible in the opposite direction by swinging movement on another member, and interengaging guide means provided respectively on each door wing and the wing supporting means for guiding the swinging movement of the wings on the respective members."

The defendant introduced in evidence the following seven prior patents: No. 195,273 to Harvey; No. 656,062 to Van Kannel; No. 696,027 to Foster; No. 836,843 to Van Kannel; reissue No. 14,255 to Van Kannel; No. 1,007,025 to Ely; No. 1,069,739 to Sutton.

Patent No. 195,273 to Harvey is for an improvement in gates, and discloses a swinging farm gate having an upper and lower hinge, the upper being merely a single central pivot, and the lower hinge consisting of a projection from the bottom of the post of the gate, which projection is horizontal and is provided with two grooves g g with arcs of circles, and the two projections e e placed on a part fastened to the ground, engage and slide in the circular grooves g g, and, when the gate is opened either way, it will be

caused to slant in such direction that it will swing shut by its own gravity. This patent has nothing to do with revolving doors, and could not be employed in a revolving door structure, as the hinges cannot pivot or swing sufficiently to enable the wings of a revolving door to fold in parallel relation, and the outward displacement of the lower portion of the wing, due to the structure of the lower hinge, would cause the wing to jam against the inclosure of the revolving door against which the edges of the wings must have close contact when in operation.

Patent No. 656,062 to Van Kannel, for a revolving door, discloses a panic proof door. Fig. 3 of this patent shows that each wing is suspended or hung from the central spindle 1, by means of articulated links or broken knuckles 27 and 23, said links or broken knuckles being provided with two pivots, both in the central plane of the wing member, whereby it is possible for the wing to swing on the outer unnumbered pivot, in either direction, and it is also possible for the wing to swing in either direction on the inner pivot 23. There is no guideway or groove for guiding the swinging motion of the wings in this patent, and, while it shows a plurality of pins, it does not show a plurality of communicating, intercommunicating guideways; the pins being placed on the central plane of the wing and not eccentric thereto.

If pressure is applied upon the wrong portion of the wing, the arm 32 may fail to release the wings, and in collapsing the wings may jam against any one of the arms 32 and obstruct the passageway.

The structure is entirely different from that of the patent in suit, and this patent has no bearing on the case.

Patent No. 696,027 to Foster, for hinge, discloses a hinge for a swinging door. The swinging door is hung upon a pair of hinges, so that, when it is opened, the plane of the door will be displaced, as shown in Fig. 7 of the patent, causing it to be closed automatically by gravity. It is similar both in construction, in mode of operation, and in action, to that of the Harvey patent previously referred to, except that the projections are placed on the bottom of the door and grooves in the supporting member 20, which is fastened to the door. Several constructions of this patent are shown, one in which there is one pin, and one in which there are two pins or projections, sliding in the grooves, but I do not think that this patent requires further consideration, as this construction could not be employed in a revolv-

ing door, for the reasons considered in discussing the Harvey patent.

Patent No. 836,843 to Van Kannel, reissue patent No. 14,255 to Van Kannel, both for collapsible revolving door, the second patent being a reissue of the first, disclose a construction known and referred to in the record and herein as the geared type of revolving doors.

This was the type of doors which formed plaintiff's principal design of panic proof door prior to the Blanchard invention, and they still have a limited sale. The construction and mode of operation of the device described in these two patents is identical, and therefore an explanation of the reissue patent will be sufficient.

A reference to Fig. 11 clearly shows the construction of the disk members and of the hangers, which attach the wings to said disk members. The disk e with a groove d which extends circumferentially to the outer periphery of the disk, which disk is also provided with the pinion g, and each wing with racks f which mesh into the teeth of the pinion. The wing support or hanger is also provided with a pivot c which slides in the groove d. In normal radial position the wings are at the four quadrants, but, when collapsed, they assume the folded parallel position shown in Fig. 11, accompanied by a movement of the pinion teeth simultaneously with the movement of the rack on the pinion teeth, so that the wing is displaced to a parallel position as shown in Fig. 11. The wings are each positioned in the normal radial position by the projection of the pin c into a socket m, the pin acting as a detent, but upon abnormal pressure the head of the pin jumps out of the socket and allows the revolution of the wing to the position in Fig. 11. This reissue patent does not show a plurality of communicating guideways carried by a central support to cause the wings to move successively on different axes, but does show a single unitary guideway which permits the revolution of the wing only on one axis; that axis being central to the plane of the wing.

The patents under discussion do not disclose a structure anticipating the patent in suit, nor does the door of the said Van Kannel patents operate upon the principle of the patent in suit.

Patent No. 1,007,025 to Ely, for revolving door structure, discloses a complicated and clumsy structure for a so-called collapsible revolving door, which does not seem to me to be a fully collapsible panic proof door.

A brief explanation of the structure described in this patent is not possible; therefore I will limit my discussion to the means by which the wings of the door are attached to certain disks and provided with devices to permit a limited movement from their normal position. The wings are supported from a series of disks, of which the upper D9 and the lower D' are rigidly attached to the central spindle D5, and one wing C¹ is suspended from these disks by means which comprises a U-shaped support for the two springs, to one end of which is attached a link, being the member D14, and the other end of the link is pivoted to a lug D40 projecting from the inner end of the wing, by which it is possible for the wing to move outwardly away from the central spindle a short distance compatible with the allowable compression of the springs. There are also provided for the wings two eccentrically placed pivots C8 upon which the wings can swing either to the right or to the left as far as the compression of the aforesaid springs will permit. A second wing C2 is joined upon the disks d2 and d8, which are fitted to turn in contact with the shaft and connected by a sleeve d10. A third wing C3 is joined upon the disks d3 and d7, which are fitted to turn upon sleeve d10, and connected by sleeve d11, the remaining wing c4 is joined upon the disks d4 and d6, which are fitted to turn upon sleeve d11 and are connected by a sleeve d12. The same suspension is found in all the disks of the doors, but the six disks d2 and d8, d3 and d7, and d4 and 6, are not rigidly attached to the central spindle, the consequence being that one wing can revolve to an arc of any extent only by the revolution of the spindle to which it is attached, and the other wings are free to revolve to any position under pressure. To bring the four wings parallel, they would all have to be moved against the tension of the powerful springs to some degree, and unless the wings were all brought together and locked, one of them might come back. There are no guideways in the Ely disk, and, although there are two eccentrically placed pivots, there is no guideway associated with them.

Patent No. 1,069,739 to Sutton, for collapsible revolving door, discloses a device which is primarily an adaptation of the old double-acting hinge, found on swinging doors, to revolving doors, and consists of a central spindle b, a support attached to the central spindle d, and at each corner of d are found on each side double-acting hinges with a pivot at each side of the central plane of the wing whereby, as in all swinging

doors, this door can swing either to the right or the left of its central plane.

The danger of the wings swinging back when collapsed, due to the action of the springs, provided for the double-acting hinges, which hold the wings in radial position, and the difficulty which may be expected in time from the sagging of the door, render this device impractical.

And, even though the patentee in the Sutton patent implies that the springs in the double-acting hinges may be omitted, that would only hasten the sagging; as where no springs are used, the doors would sag immediately.

In this patent there is no guideway for bodily shifting the wing connection with relation to its support from one pivotal axis to another.

Consideration of the prior art shows that there was novelty and invention in the patent in suit, and not merely the act of a skilled mechanic, and that it operates upon a different principle than that utilized in any earlier door.

The utility of the patent in suit was well summarized by Mr. Blanchard, who said: "The new model of door is very much simpler, having fewer number of parts, it would be very much more difficult for this type of door to get out of order, it would be practically impossible for the door to jam and become inoperative in case of a panic, and it is far more rugged in construction and would last longer, being of greater service to the purchaser than the previous style; it, of course, is less costly for us to manufacture." Record, p. 54.

The patent has enjoyed great commercial success.

We now come to the question of infringement.

Whether the model which the plaintiff claims to have sent to the defendant in the fall of 1931 ever came into the hands of any of the officers of the defendant seems to me to be of small moment, as the evidence shows that the defendant ordered revolving doors of the Blanchard type from the plaintiff in the early part of 1932, which were installed in the spring of 1932, and that shop drawings of the new design were submitted to the defendant at about the time of the first order in January, 1932. The first of the doors of the type alleged to infringe was installed by the defendant in September, 1932.

The door and wing supports of the defendant's device are shown on Exhibit 17, on the right-hand side thereof, where for convenience letters with the prime mark are used to designate the various elements, consisting of the disk, pins, guideways, and a portion of only one wing of the door is shown. The disk is formed with a pair of axially extending pins B' and C', and a pair of communicating guideways D' D', while the wing is formed with a pair of recesses for co-operating with the pins B' and C', and with an axial pin A', which engages the guideway. The door is held in a normal radial position by means of a spring-pressed detent, projected into a recess formed in the periphery of the disk. In collapsing in one direction, the wing will pivot around the pin B', and will be guided in its pivoting by means of the interengagement of projection A' and one of the guideways D'. In collapsing in the opposite direction, the wing will pivot around the pin C' and will be guided by the projection A' and the other guideway D'.

Blanchard Revolving Door Wing Support

General Bronze Corp. Revolving Door Wing Support

The door and wing supports of the device of the patent in suit are shown on the left-hand side of that exhibit, consisting of the disk, pins, and a portion of one-door wing, the pin 21 as A, the pins 22 as B and C, and the walls 16 as D D.

A comparison of the structures Figs. 1 and 2 shows that in each there is a three-point connection A B and C, and A', B' and C', between the wing and disk, in which two of the points serve essentially as pivots, and the third point co-operates with communicating guideways in the disk, to guide the pivoting around the other two points.

Defendant contends that, in the alleged infringing door, the disk does not have communicating guideways, but only one guide-

way. That does not seem to me to be exactly true, in the sense that the words "communicating guideways" are used in the patent in suit, as the conformation of the guideways in the alleged infringing structure, and the manner in which they are used, shows that they are communicating guideways in the same sense as in the patent in suit, in that one of them serves as a guideway when the door collapses in one direction, and the other serves as a guideway when the door collapses in the other direction.

The three fulcrum points in both instances are disposed in the form of triangles, B C and B' C', being the bases; A and A' being the apices. In each instance the door wing, in collapsing, pivots about one of the two corners of the base B C or B' C', and is guided by the apex A or A', riding in one of the communicating guideways D D and D' D'. The pivotal points B C and B' C', and the communicating guideways D D and D' D' are eccentrically disposed with respect to the spindles 1 and 1'. There is a slight difference between the two forms, but they are merely variations in design, as the principle of operation and essential features of construction are the same.

In the disk of the patent in suit there is a short preliminary circumferential sliding upon the pivotal points, but, as I have hereinbefore said, this sliding forms but a minor proportion of the total pivoting of each door wing.

In the patent in suit the apex A of the triangle points towards the center of the disk, while in the defendant's design it points toward the periphery of the disk. In the patent in suit the pivotal pins B and C are secured to the door wing and co-operate with recesses formed in the disk, while in the defendant's design they are secured to the disk and co-operate with recesses formed in the end of the door wing. The defendant has reversed the position of the triangle and has reversed the location of the pins B' C'.

The claims of the patent in suit fall into two groups, claims 12, 14, 15, 16, 17 and 18 form one group. Claims 4, 6, and 13 form the second group. Claim 17 may be taken as illustrative of the first group, and, dividing it into its several elements and applying them to the defendant's device, it will be seen that the claim reads directly on the defendant's device, which includes every element of the defendant's device. This is likewise true of claims 12, 14, 15, 16, and 18; all of the elements of each of them being included in the defendant's device.

Of the second group, claim 4 may be taken as representative, and, dividing it into its several elements and applying it to the defendant's device, it will be seen that the claim reads directly on the defendant's device, except that the location of the pins B' C' in the defendant's device is on the disks, while in claim 4 the pins are located on the wing. The same is true of claims 6 and 13, each of which calls for a "set of projections on the door wings." Whether such pivotal projections be located on the door wings or on the disk is immaterial, and does not in any way alter the operation of the device.

Claims 4, 6, 12, 13, 14, 15, 16, 17, and 18 of the first patent in suit No. 1,890,365 are valid and infringed.

*Patent No. 1,514,851 to Gormley, the second patent in suit.*

This patent is described on its face as for a speed control for revolving doors and the like.

The problem of controlling and regulating the speed rotation of revolving doors confronted those skilled in the art from the time that revolving doors were first made. Many expedients were tried, but without satisfaction, such as furnishing adjustable weather strips on the sides of the wings, several types of hydraulic governors and electrically operated speed control, and it remained for the patentee of the patent in suit to solve the problem by his comparatively simple invention.

This invention relates primarily to a governing mechanism which is actuated by the rotation of the door, and which controls the possible speed of rotation in such manner that, when a predetermined speed is reached, the brake will begin to function and prevent the acceleration or more speedy rotation of the door. The invention is illustrated by one form, but it is specifically stated that departures from this particular preferred form may be made within the scope of the invention. The device as shown and described comprises a central spindle 10, at the end of which, the lower end being used by way of illustration in the patent, a gear member 17 is attached rigidly to the said spindle, the said gear member 17 meshing into a pinion member 32, and on the same shaft as the pinion is attached another gear member 30, which in turn engages the thread of a worm 26, and by intermeshing engagement, the shaft 28 on which the worm is disposed, is caused to revolve. At one extremity of the shaft 28 is provided a rotating disk 22, on which are suspended pivotally three brake dogs 23, 23, 23, which are pivoted at the

point 24. These brake dogs engage with the circumferential brake shoe 21.

Claims 1, 2, 3, 4, 5, and 9 are involved in the present suit; they may be divided into two groups, claims 1 and 2 forming one group, and claims 3, 4, 5, and 9 forming the other group.

The changing of the location of the speed controlling device from one end of the door to the other does not relieve from infringement, being immaterial.

Claim 1, which is illustrative of the first group, reads as follows: "1. The combination of a rotatable spindle of a revolving door; a hidden support for said spindle below said door; a member secured to and rotatable with said spindle, said member being located between the said support and lower edge of said door, and a speed controlling device actuated by said member."

The substitution of an equivalent for the worm does not relieve from infringement.

Claim 9, which is illustrative of the second group, reads as follows: "9. The combination of a rotatable spindle for a revolving door; a support for one end of said spindle having a chamber therein; a rotatable worm in said chamber; means for imparting rotation to said worm by the rotation of said spindle; and means within said support actuated by said worm for retarding its rotation when a predetermined speed is reached."

Defendant offered in evidence the following alleged prior art patents: Patent No. 519,110 to Gardner; patent No. 603,363 to Ireland; patent No. 872,050 to Burhans; patent No. 1,014,997 to Blickensderfer; patent No. 1,272,595 to Anderson; patent No. 1,388,199 to Gormley; and drawings and a model of an old hydraulic governor.

Patent No. 519,110 to Gardner, for retaining or lowering apparatus, shows an attachment for dental chairs which comprises a rack attached to the bottom of the chairs, a gear wheel meshing therewith, a following train of gear wheels which drive a worm L, and upon the end of the shaft about which the worm revolves there is provided a brake disk, brake dogs, P P, and a circumferential brake shoe O, whereby the descent of the chair can be regulated as described. The mechanism is a combined brake for holding the chair in a stationary position, and a governor for preventing the chair from lowering too rapidly. It has nothing to do with revolving doors, and could not be used in association with a revolving door.

Patent No. 603,363 to Ireland, for governors, shows a device which is a centrifugal governor provided with shoes 12, secured to levers 9, pivoted upon bolts or pins 10, and pivoted with weights 11, and mounted on a disk 2, which disk is in turn mounted on a central spindle 6, and the revolution of the spindle and the disk causes the shoes 12 to move out by centrifugal action against the flanges 4, against the action of the spring 18. This device would not operate as a brake for a revolving door, as its braking action would be insignificant if mounted directly on the spindle of a revolving door.

Patent No. 872,050 to Burhans, for fire escape, shows a centrifugal braking device attached to a fire escape. The reel C which carries the rope, constitutes the means for escaping from a fire, has attached to one end a gear 11, which meshes with a worm 12 on the shaft, 10, and at the upper end of the shaft 10 is attached a centrifugal brake similar to those already considered, which consists of the brake dogs 8 and the circumferential brake shoe member 7. This is not a braking device for a revolving door, but is a device found in arts unrelated to revolving doors.

Patent No. 1,014,997 to Blickensderfer, for speed controlling mechanism for revolving doors, shows a brake for a revolving door that has attached to the upper end of the shaft 22 a small gear or pinion 25, which meshes with a stationary gear 26. On the shaft 22 is mounted the usual form of ball governor, the balls of which 18 are shown in Fig. 3. The revolution of the door, its spindle, and the gear attached thereto, causes a revolution of the centrifugal ball governor device, which causes a member 32 to frictionally engage a brake shoe member 30 and exert a resistance against the accelerated revolution of the spindle. This device is entirely exposed, and, if not made small, would be unsightly on a door, and made small, as it is, the frictional resistance is small. This is the only patent cited that is in this art.

Patent No. 1,272,595 to Anderson, for governor mechanism for spring motors, shows a centrifugal governor for spring motors such as talking machines, in which the revolution of the worm 38 brought about by the train of gearing causes the spreading apart of the centrifugal ball governor members 41, and thereby exerting the braking action.

Patent No. 1,383,199 to Gormley, for speed-controlling mechanism for load-lifting devices, shows a mechanism best illustrated by its application to a high-speed screw jack,

where, by means of a gear wheel 29, a shaft 35, having secured thereto a pinion 36, meshing with gear wheel 29 and secured also to said shaft A, worm wheel 37 which meshes with a worm 38, a braking action can be exerted to offset or prevent the too rapid descent of the screw jack. This braking device is not automatically but manually operated, is in an unrelated art, and could not be used as a governor for revolving door.

Defendant also introduced in evidence a blue-print, a photograph, and a part of an old hydraulic governor formerly manufactured by Van Kannel Revolving Door Company.

In the old hydraulic governor in question there are two pistons, one on each side of the axis of the door, and on top of the king-bolt of the door is a large gear which is meshed with two smaller pinions on either side that work the crank that works the pistons back and forth in the cylinders. Whenever the door was revolving, both of those pinions began working and began pumping the oil back and forth through the gateway. There was an adjusting screw that regulated the amount of the opening in the gateway which, in turn, offered resistance to the speed of the door as it went around. This governor was mounted overhead in a trolley. This device was not satisfactory, as it failed to perform year in and year out. It operated differently in cold and warm weather, as plaintiff was not able to find any known liquid which does not change in viscosity between summer and winter, and therefore it operated very stiffly in the wintertime and too freely in the summertime. Such a device could be kept in working order only by constant adjustment. It would cost much more to make than the device of the patent in suit. The old governor did not anticipate the patent in suit nor did it teach the patentee of the patent in suit how to solve the problem of providing speed control for revolving doors.

A consideration of the alleged prior art patents cited by defendant shows that only one patent, No. 1,014,997 to Blickensderfer, has any relation to speed control mechanism for revolving doors, and that all of the other patents cited by the defendant are in unrelated arts, and were not designed nor intended for use as speed control mechanisms for revolving doors. These patents in non-analogous arts cannot be relied upon as anticipations. Line Material Co. v. Brady Electric Mfg. Co. (C. C. A.) 7 F.(2d) 48; American Cone & Wafer Co. v. Denaro (C. C. A.) 297 F. 913.

Patent No. 1,014,997 to Blickensderfer discloses a device which is exposed to view between the wings of a revolving door and is not operatively connected with the central spindle of the door, and the device so disclosed is different from that of the patent in suit.

All of the patents cited by the defendant, except patent No. 603,363 to Ireland, were cited and considered by the Patent Office during the prosecution of the Gormley patent in suit.

None of the patents cited by the defendant nor the hydraulic governor cited by the defendant anticipate the patent in suit.

Patent No. 1,514,851 to Gormley, the second patent in suit, shows novelty and invention, and not merely the act of a skilled mechanic, as Gormley solved the problem in an effective and simple manner, which every one else overlooked through many years of searching and developing by those skilled in the art. The simplicity of the invention, in view of our knowledge after the event, must not be permitted to detract from the merit of the invention, which must be determined on the basis of the knowledge of those skilled in the art at the time the invention was made, and the many efforts which had been made to solve the problem.

Plaintiff's commercial product is the same as the Gormley patent in suit, with one exception, that is, the plaintiff employs spur gears instead of the worm, and worm gear for which the spur gears are an equivalent.

Plaintiff has been manufacturing a governor of the Gormley type for the past year, and they have given satisfaction and have met with commercial success, as they have in that time sold about fifty of them.

No matter what praise the defendant may give to the prior art, it gave a higher tribute to the invention of the patent in suit by imitation.

The claims in suit of the Gormley patent in suit are valid.

This brings us to the question of infringement.

The defendant's speed control mechanism has a mechanical brake of the same type as the patent in suit, concealed from view at one end of the door, and operated by a gear secured to the central spindle of the door. The structure used by defendant is shown in Exhibits 7 and 22, and comprises a gear secured to the upper end of the spindle of the door, meshing with a pinion keyed to a short stub shaft, on the other end of which is se-

cured the brake disk. A pair of brake shoes pivoted to the disk are held by springs, so as normally to be within the confines of the periphery of the disk.

When the disk is rotated at a sufficient rate of speed, the dogs will pivot outwardly and engage a cylindrical brake shoe surrounding the disk.

In all essential features, the defendant's mechanism is the same as the patent in suit, except that it employs spur gears instead of the worm and worm gear for which the spur gears are the equivalent, and it employs an intermediate gear between the gear on the spindle and the pinion on the governor shaft.

That the defendant's speed control is hidden above the door, while that illustrated in the patent in suit is hidden below the door, is immaterial, as one is the equivalent of the other.

Claims 1, 2, 3, 4, 5, and 9 are involved in the present suit.

These claims read on the defendant's structure, and infringement is not escaped because in defendant's structure the speed-controlling device and other parts are located above the door instead of below the door, as described in claims 1 and 2, as one location is the equivalent of the other, nor because the defendant uses spur gears instead of a worm, as recited in claims 3, 4, 5 and 9, as they are equivalents.

Claims 1, 2, 3, 4, 5, and 9 of the second patent in suit, No. 1,514,851, to Gormley, are valid and infringed.

Defendant also alleges as a defense that the plaintiff does not come into court with clean hands.

This charge of unclean hands is based upon the Munson patent and file wrapper relating to speed regulators for revolving doors.

It can have no application in any event to the first suit, which is based on patent No. 1,890,365 to Blanchard, for full collapsible panic proof revolving door, as the suits were separate and distinct suits, and tried together by consent, for convenience.

The defense of unclean hands likewise has no application to the second suit, on the Gormley patent No. 1,514,851.

While it is a fact that plaintiff is the owner both of the second patent in suit and the Munson patent, it is also a fact that the Munson patent is not involved in this suit; and, even if it was a fact, and I cannot find from the evidence that it is, that plaintiff deceitfully secured the Munson patent, that

would have no bearing on the issues of the present suit, as it has no immediate and necessary relation to the equity sought in respect to the matter in litigation. Keystone Driller Co. v. General Excavator Co., 290 U. S. 240, 54 S. Ct. 146, 78 L. Ed. 293; Bentley v. Tibbals (C. C. A.) 223 F. 247; Andrew Jergens Co. v. Bonded Products Corporation (C. C. A.) 21 F.(2d) 419; Youngs Rubber Corporation v. C. I. Lee & Co. (C. C. A.) 45 F.(2d) 103.

While in the case of Keystone Driller Co. v. General Excavator Co., supra, the Supreme Court found that the plaintiff came into court with unclean hands, the facts in that case are very different from the facts in the instant suit. In that case the plaintiff had suppressed evidence of prior use relating to one of the patents in that suit, and, in attempting to secure a preliminary injunction, had relied upon a prior decree which had been secured because of the suppression of the evidence, and its culpability was directly connected with the subject-matter of the litigation, whereas in the instant suit, whatever culpable acts, if any, that did occur, occurred in relation to the Munson patent, and that patent is in no way involved in the instant suit.

The attempt of the defendant to form a basis for the charge of unclean hands by the quotation of separate sentences of the patent solicitors' argument in the Munson file wrapper must and does fail, as criticism of the worm and gear arrangement of the patent as not a practical device in an application for another patent certainly is no evidence of unclean hands in this suit.

The criticism may have been honestly made by that attorney, but, on the evidence of both plaintiff's expert and defendant's witness Ely, I am convinced that the device is operative, although both plaintiff and defendant, in their commercial structures, use an equivalent for the worm.

The defense of unclean hands is not sustained.

The plaintiff is entitled to a decree in each of the suits against the defendant with injunction, costs, accounting, and the usual order of reference.

A decree may be entered in accordance herewith.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court, in accordance with rule 70½ of the Equity Rules (28 USCA § 723) and rule 11 of the Equity Rules of this court.