## RADIO CORPORATION OF AMERICA v. HYGRADE SYLVANIA CORPORATION
(two cases).

## GENERAL ELECTRIC CO. v. SAME.
Nos. 4753, 4754, 4757.

District Court, D. New Jersey.
July 9, 1934.

Edward W. Vaill, of New York City (Thomas G. Haight, of Jersey City, N. J., and Stephen Philbin and Abel E. Blackmar, Jr., both of New York City, of counsel), for plaintiffs.

Harry B. Rook, of Newark, N. J. (George F. Scull, Newton A. Burgess, and John J. Rogan, all of New York City, and Hugh M. Morris, of Wilmington, Del., of counsel), for defendant.

FORMAN, District Judge.

The plaintiffs, the General Electric Company and the Radio Corporation of America, brought three suits in equity against the defendant, the Hygrade Sylvania Corporation, for infringement of certain patents of which the plaintiffs are the owners. The defendant filed answers. The plaintiffs moved that several paragraphs of the answers, constituting part of the defendant's alleged defense and a counterclaim or set-off, be struck out. The motions were heard by the court. The defendant obtained permission from the court and filed amended answers. The plaintiffs moved that the court strike paragraphs 14 to 18 in suit number 4757; paragraphs 19 to 23 in number 4753; and paragraphs 13 to 17 in number 4754, all inclusive. Under agreement, there has been no further argument and the court is to dispose of the motions on the oral arguments, before the amendments, and the several briefs submitted by the parties.

It is necessary to consider only paragraphs 14 to 18 in suit number 4757 in disposing of the motions. The paragraphs attacked by the motions in the other two suits are substantially similar.

The allegations of the parts of the answer and the counterclaim, as amended, to which the motions are directed, are, so far as they are material, as follows:

The General Electric Company and the Radio Corporation of America, the plaintiffs in the suits and others, acquired and continue to acquire numerous patents and patent rights in the radio field, including the patents in suit. By several agreements in writing they have combined and conspired to acquire all the patents in the radio art, and by cross-licensing and exclusive licensing agreements to restrain and prevent all competition. They have combined and pooled the patents and have agreed to license only those in the combination and conspiracy to manufacture under the patents, and refused to grant the rights to others, for the purpose of restraining competition and creating a monopoly in interstate commerce. They have combined and conspired to prevent the manufacture and sale of competing apparatus not manufactured under their patents; refused to license any one but those who will not manufacture, sell, or use competing apparatus, fixed prices, and refused to grant rights under patents of the pool to those who refuse to join in the conspiracy. They have refused to place competing apparatus, covered by patents which they own, on the market. They control the development of the radio art by restricting the supply of tubes available, and have refused to supply apparatus to competing persons not operating under the plaintiffs' pat-

ents and have begun frequent suits against them for infringement. The plaintiffs have no standing in a court of equity because they entered and continue to enter into illegal combinations and agreements in violation of a consent decree in a suit between the United States and the Radio Corporation of America (Equity No. 793), in the District Court for the district of Delaware. They interfere with the defendant's business and prevent the licensing of the defendant under certain patents in violation of the decree. They illegally conspired and continue to conspire to restrict competition and recognize certain licenses as exclusive in violation of the decree, and therefore have no standing in a court of equity. They compel a licensee to accept licenses under all the patents controlled by the pool. They have refused to license the defendant on reasonable or any terms, and, therefore, the defendant has a license implied in law to operate under the patents in suit. The suit, No. 4757, is prosecuted by the Radio Corporation in the name of the General Electric Company under an illegal agreement between the plaintiff and third persons, and, therefore, the suit cannot be maintained or a decree entered for the plaintiff unless the agreement is adjudged to be valid.

· By way of counterclaim, the defendant asks for a decree that the plaintiffs hold the patents in suit in trust for the public, and that the plaintiffs be restrained from prosecuting this suit until it is ready and willing to grant express licenses to competitors on reasonable terms and until it ceases violating the decree of the District Court for the district of Delaware.

The defenses and counterclaim under attack may be summed up as follows:

The plaintiffs violated the anti-trust laws and continued to do so for a period of years. In a suit brought against them by the United States for those violations, a decree was entered against the plaintiffs, enjoining and restraining the plaintiffs from combining or agreeing to restrain interstate commerce, and, in particular, to limit or restrict persons from granting licenses under its own patents. The plaintiffs continue to violate the anti-trust laws and are violating the decree of the court. They refuse to grant the defendant a license on reasonable terms because of an agreement between them restricting licensing in violation of the anti-trust laws. For that reason, the plaintiffs have no standing in equity, and furthermore the defendant has a license implied in law

and is entitled to affirmative relief by way of counterclaim against the plaintiffs.

The plaintiffs contend that the defendant's case does not fall outside of the general rule that the fact the plaintiffs may be members of an unlawful combination in restraint of trade does not give the defendant the right to appropriate the property of the plaintiffs by infringing its patents, and that the counterclaim must fail as it does not state a cause of action.

The gist of the defendant's position has been stated as well as could be in its own conclusion: "The basis of defendant's affirmative defenses and counterclaims is that plaintiffs in these suits together with others who are parties to the Agreement A–1 have thereby entered into an illegal combination for the joint exercise of their several lawful individual monopolies and have thereby been enabled to create and enforce a monopoly and domination of the radio industry which far exceeds and transcends any monopoly contemplated or authorized by the patent laws and that defendant by the denial to it of a license under the patents sued upon in said suit No. 4757 and by the institution of these suits, which depends upon the illegal Agreement A–1, has suffered a direct, special and unique injury and damage which is both substantial and irreparable and which does not affect the public generally."

This form of the defenses relied on by the defendant is not unusual; but the courts have invariably struck them from the pleadings. General Electric Company v. Minneapolis Electric Lamp Company (D. C.) 10 F. (2d) 851; Radio Corporation v. United Radio & Electric Corporation (D. C.) 50 F. (2d) 206; Radio Corporation v. Majestic Distributors (D. C.) 53 F.(2d) 641.

■ The law is too well settled to question the general rule that an allegation in a suit for infringement of a patent, trade-mark, or copyright to the effect that the plaintiff is a party to an unlawful combination does not constitute a defense. Brown Saddle Company v. Troxel (C. C.) 98 F. 620; Motion Picture Patents Company v. Eclair Film Company (D. C.) 208 F. 416; Independent Baking Powder Company v. Boorman (C. C.) 130 F. 726; Virtue v. Creamery Package Manufacturing Company (C. C. A.) 179 F. 115. The defendant admits the general rule, but contends that an exception arises when the defendant shows that it suffers special damage apart from the damage suf-

fered by the general public by reason of a violation of the anti-trust laws. It asserts that this exception is recognized impliedly by the following authorities: General Electric Company v. Minneapolis Electric Lamp Company (D. C.) 10 F.(2d) 851; Radio Corporation v. United Radio & Electric Corp. (D. C.) 50 F.(2d) 206; Western Electric Company v. Pacent Reproducer Corporation (D. C.) 53 F.(2d) 639; Radio Corporation v. Majestic Distributors (D. C.) 53 F.(2d) 641; Radio Corporation·v. Duovac Radio Tube Corporation (D. C.) 6 F. Supp. 275.

In those cases, excepting that of the United Radio & Electric Co., there were no allegations that suggest any special injury to the defendants by reason of illegal violations of the anti-trust laws. The defendant does not point to any specific statement of the principle on which he relies. The strongest language, in the cases cited to sustain the defendant, is that found in Radio Corporation v. Majestic Distributors, supra (D. C.) 53 F.(2d) 641, 643, in which the court said: "If the defendant could plead some equity special to itself and not generally a violation of certain laws of the United States, not affecting title but merely in connection with the use made of the patents, we would have a different question presented."

It may be reasonable to suppose that if a defendant could allege a direct injury by reason of a violation of the anti-trust laws by the plaintiff, it would constitute a defense on general equitable principles. Georgetown v. Alexandria Canal Company, 12 Pet. (37 U. S.) 91, 97, 9 L. Ed. 1012; General Electric Company v. Minneapolis Electric Lamp Company (D. C.) 10 F.(2d) 851, 854; Bisphanes Principles of Equity, § 439. It is safe to assume that such may be the law for the purpose of deciding the question of the validity of the defenses here; for the defendant is unable to show that he has sustained any special damage.

The defendant is being sued for infringement of the plaintiffs' patents. The defendant had no rights, granted by the plaintiffs, to use these patents; although it asserts that it made every effort to obtain licensing agreements on reasonable terms. The defendant alleges that the sole reason for refusing to grant licenses to it was because of the existence of the plaintiffs' illegal agreement A–1, of November 21, 1932, which provides:

"2. In all cases of infringement of a patent of any party hereto in a field in which the licenses herein·granted to another party include the general right to grant sub-licenses, if the party holding title to such patent shall not bring suit within thirty days after receipt from the other party of written notice and full information of such infringement together with a written offer from such party to pay half the cost and expenses of such suit, that (a) the party having given such notice, information and offer may at its own expense bring suit against the infringer in question in the name of the party holding legal title to the patent and (b) such party holding title to the patent shall assign to the other party all claims, demands and rights of action against the particular infringer designated in such notice on account of any and all past and future infringements of such patent in said field.

"3. If, however the party holding title to such patent shall bring suit against the infringer within thirty days after receipt of said notice and information from the other party, or independently thereof, then, any recoveries from the infringer shall be applied first toward the reimbursement of the costs and expenses of such suit and the remainder, if any, shall be divided between the parties as their interests appear. In any such case the party holding title to the patent shall not, without the consent of the party having the general right to grant sub-licenses, release or license the infringer or otherwise settle or dismiss the suit so far as concerns infringement in the fields in which such other party has the right to grant sub·licenses."

That agreement the defendant contends is in violation of the decree of the District Court for the district of Delaware, entered against the plaintiffs on November 21, 1932. Therein, the defendant says that it has suffered special damage apart from the general public. The fact is that the government approved agreement A–1 as lawful and consented to its execution. See quotation from said decree found on page 64 of defendant's amendments to answer and counterclaim filed herein.

The defects in the defendant's argument appear to be obvious, more or less. There are two reasons why it is unable to establish its defense. The patents are the plaintiffs'· property, and, that being the fact, they may refuse to license or license as they

choose. The owner of a patent has a limited monopoly. Radio Corporation v. United Radio & Electric Co., supra; United States v. American Bell Telephone Company, 167 U. S. 224, 17 S. Ct. 809, 42 L. Ed. 144; Paper Bag Patent Case (Continental Paper Bag Co. v. Eastern Paper Bag Co.), 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122. Whether the refusal to license is based on a commendable or odious reason is immaterial. The law allows the inventor absolute property in his invention.

If it is assumed that the court has power to order an owner of a patent not to refuse to license an individual because the reason for the refusal involves the violation of the anti-trust laws, what would be accomplished? The decree would be worthless. The holder of the patent can refuse to grant a license arbitrarily. That is the privilege granted him by the patent law. That being so, the alleged illegality of the agreement cannot affect the defendant individually.

Nor does the court overlook the possible implication of the defendant's allegations that the owner of the patents involved is willing to grant the license but is unable to do so because of its alleged illegal agreement to restrain licensing with third persons. The same reasoning used above disposes of this position. Moreover, if the answer alleged such a fact and if infringement is conceded, the defendant itself is responsible for being unable to obtain licensing agreements. Under agreement A–1, the owner of a patent in the so-called pool is apparently entitled to license a person on mutually satisfactory terms until the owner has been notified by a party to the agreement that such person is an infringer and that a suit should be brought against the person. Should the defendant be an infringer, it must have been aware of the terms of the agreement, when it began to use the plaintiffs' property. Consequently, its position in equity ought not to be better than that in which it seeks to place the plaintiffs.

■ The defendant contends that the plaintiffs have come into this court with unclean hands. Keystone Driller Company v. General Excavator Company, 290 U. S. 240, 54 S. Ct. 146, 78 L. Ed. 293. That doctrine of equity is applicable only to cases where the plaintiff's unconscionable conduct is directly connected with the subject-matter of the suit. General Electric Company v. Minneapolis Electric Lamp Company (D. C.) 10 F.(2d) 851. In the Keystone Driller Company Case, supra, on which the defendant relies, the inequitable conduct of the plaintiff related to the validity of one of the patents in suit. The defendant is attempting to apply the doctrine of unclean hands to the alleged unlawful agreement A–1. As the court has pointed out, this agreement has no bearing on the issues of the validity or infringement of the patents in suit and does not touch the defendant individually.

■ The defendant insists that it has a license implied in law upon reasonable terms under the patents in suit because the plaintiffs have unlawfully restrained interstate commerce and, therefore, that the plaintiffs must hold their patents in trust for the public. The authority for this unusual contention is found in a sentence extracted from the opinion in the case of the Standard Oil Company v. United States, 283 U. S. 163, 51 S. Ct. 421, 425, 75 L. Ed. 926, which reads: "Unless the industry is dominated, or interstate commerce directly restrained, the Sherman Act [15 USCA §§ 1–7, 15 note] does not require cross-licensing patentees to license at reasonable rates others engaged in interstate commerce."

The meaning of the extract is so clear that it seems unnecessary to resort to the context of the opinion to find that the court was discussing whether or not onerous fees charged for licensing by cross-patentees violated the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15 note). The remedies of the anti-trust laws are exclusive. Harms v. Cohen (D. C.) 279 F. 276; Witmark & Sons v. Pastime Company (D. C.) 298 F. 470; United States v. Babcock, 250 U. S. 328, 331, 39 S. Ct. 464, 63 L. Ed. 1011. There is no law that one who restrains trade forfeits one's property to any person who chooses to take it.

■ In relation to No. 4757, the defendant asserts that the suit is based on an illegal contract since it is being prosecuted by the Radio Corporation in the name of the General Electric Company under agreement A–1. The suit is based on the patents belonging to the General Electric Company. It is immaterial to the defendant as to how the costs of the suit are paid. The court has no power to pass on the legality of agreement A–1. The issues joined by the pleadings and before the court are the validity and infringement of the patents in suit.

Coming to the counterclaims, the defendant evidently attempts to state a cause of

action based on section 16 of the Clayton Act (15 USCA § 26), which provides in part: "Any * * * corporation * * * shall be entitled to sue for and have injunctive relief * * * against threatened loss or damage by a violation of the antitrust laws, * * * when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity."

The defendant's position on the counterclaims involves largely a repetition of the discussion heretofore. It is established that the defendant must show a threatened loss or damage to itself to obtain relief under the statute. Connecticut Telephone & Electric Co. v. Automotive Equipment Company (D. C.) 14 F.(2d) 957, 967; Radio Corporation v. United Radio & Electric Corporation (D. C.) 50 F.(2d) 206. This the defendant is unable to do for the reason that it does not show as a matter of right that it is entitled to be licensed by the plaintiffs and the allegations of the pleadings will not support the argument that it could have obtained a license but for the alleged unlawful agreement A–1.

The defendant's pleadings do not, in fact, allege that if the agreement A–1 falls, it can obtain a license. His allegations are based on the statements in certain correspondence, principally in two letters, that were written by an officer of the General Electric Company to an officer of the defendant and by a firm which was apparently the General Electric Company's counsel to the president of the company. The two letters referred to are cogent enough to set out in part:

"Regarding transmitters, you are now being sued under our patents relating to them and therefore, under the opinion outlined in Mr. Neave's letter, mentioned above, we have no right, even should we desire to do so, to license you under these patents."

"Referring to our conversation of this morning, the rights of G. E. as to granting radio receiving tube licenses under its own patents are those fixed in the agreements of November 21, 1932 which were approved by the Government at the time when the decree was entered in the Government suit.

"G. E. now has the right to grant licenses to others under its own patents, except that it can grant no licenses to Hygrade Sylvania under the following patents: Langmuir 1244217, 1558437, Langmuir Re. 15278, Pike 1758803 and Hull 1855885.

"The reason for this exception is that, in accordance with one of the agreements of November 21, 1932, if RCA asks G. E. to bring suit under G. E. patents under which RCA has licenses with right to grant licenses to others, and G. E. does not do so, RCA may do so in the name of G. E.; in any such case G. E. cannot, without the consent of RCA, license the infringer so far as concerns infringement in radio fields. In accordance with this, suit has been brought against Hygrade Sylvania on the above mentioned G. E. patents, so the latter has no right to grant radio tubes licenses to Hygrade Sylvania under those patents, without the consent of RCA."

The allegations of the counterclaims in these suits are much like those in the United Radio & Electric Co. Case, supra, wherein this court struck the counterclaim. The defendant here has endeavored to go further in its allegations than heretofore attempted, but a close analysis of the pleadings filed in the United Radio & Electric Co. Case discloses considerable similarity.

It is unnecessary to discuss the question whether or not the counterclaims conform to the requirements of Equity Rule 30, 28 USCA following section 723. The grounds on which the court has disposed of the motions make it clear that the allegations of the counterclaims neither arise out of the transaction which is the subject-matter of the suit nor form the subject of an independent suit in equity against the plaintiffs. Texas Company v. Borne Scrymser (C. C. A.) 68 F.(2d) 104.

The motions to strike should be granted.