KEYSTONE DRILLER CO. v. THE BYERS MACH. CO. et al.

THE BYERS MACH. CO. et al. v. KEYSTONE DRILLER CO.

No. 2084.

District Court, N. D. Ohio, E. D. Jan. 23, 1929.

On Rehearing March 24, 1932.

F. O. Richey, of Cleveland, Ohio, Philip E. Siggers, of Washington, D. C., and Richey & Watts, of Cleveland, Ohio, for plaintiff.

Horace B. Fay, and Fay, Oberlin & Fay, all of Cleveland, Ohio, for defendants.

JONES, District Judge.

This cause was tried and submitted to the Honorable D. C. Westenhaver in September, 1927. Due to his sickness and subsequent death, it was not decided. By written stipulation of counsel for the parties, it was agreed that the matter should be submitted without retrial to one of the judges of this court; and, upon oral argument had January 9, 1929, the matter was submitted on the record and briefs.

This is a patent infringement suit involving pull-stroke ditchers or excavating scoops and machines. They are distinguished from the ordinary steam shovel in that they dig inwardly, toward the operating machine, as a pick or hoe, rather than away from the machine, as a shovel. The pull-stroke or inwardly digging shovel has an outstanding advantage over the ordinary steam shovel, in that the ditch or trench is cut the width of the bucket only, and the machine always remains on solid ground as the excavation progresses, rather than astride or over the wall of the ditch or trench. Another advantage urged for this type of machine is its interchangeable character; that is, construction for other uses may be applied to the same operating machinery. The patents claimed to be infringed are, generally speaking, combinations of old elements producing improvements and advantages over prior conceptions and embodying many of the functional elements of earlier invention. Plaintiffs contend that claim 4 of Clutter patent 1,317,431, claims 5, 6, 7, and 9, of Wagner, 1,476,121, and all claims of the two Downie patents, 1,511,114 and 1,543,250, are infringed by the defendants' construction. It is the plaintiff's claim that the infringing use of these inventions is disclosed by Plaintiff's Exhibits 16, 17, and 18, which are to be found in the defendants' advertising catalogues and referred to as, "Byers' Bear Cat."

One of the chief advantages claimed for the plaintiff's machine is its ability to break through, with a hammerlike blow, rock, shale, sandstone, and the like, found near the ground surface, thus doing away with considerable blasting. Another advantage being its control by two lines, or two control members; and, further, that it has the advantage of exact spotting in a wide area or range for the discharge of the spoil or contents of the scoop, having the falling bottom which may be closed by momentum produced by manipulation of the scoop, thus accomplishing, perhaps, old results in a new and useful manner, as well as obtaining new and better results by reason of a novel combination of some old elements. Such a result has been repeatedly held to require inventive faculty and produce invention.

Without going into detail or discussing technical means, I think the plaintiff's patents have initiated and accomplished, in a practical, commercial, and economical way, an advance in the field of mechanical digging, and that through its efforts and developments have produced a better and, in substantial respects, a new result out of old elements in the art of trenching and ditching.

It is not thought necessary here to review the extensive reference to the prior art, since from an examination thereof nothing suggests or anticipates the novel operative control and other commercial advantages found in the claims in suit. It seems to me that the plaintiff, through the successive steps of Clutter, Wagner, and Downie, has developed the art over the earlier disclosures. I am satisfied, from a reading of the transcript of the

testimony and the evidence in the case, that the defendants' construction was the result of the study of plaintiff's conceptions, Clutter, Wagner, and Downie, and the copying of the plaintiff's construction and mechanism.

The parts of the defendant's machines are combined and function in precisely the same way as the plaintiff's commercial machine. The defendants have taken substantially the plaintiff's patents. I find no substantial variation in the construction of the defendants' machine which is not within the scope of the claims relied upon or the result of mechanical suggestion and change. One of the most important accomplishments claimed by the plaintiff for its commercial machine, that of the two-member control, appears to have been stressed in the "Byers' Bear Cat" catalogue by the legend appearing in Plaintiff's Exhibit 17, "The All-Purpose One-Man Crane," and as appears in Plaintiff's Exhibit 18, "The All-Purpose One-Man Crane-Shovel."

Defendants' machines, as appear in Plaintiff's Exhibits 16 and 17 (defendants' catalogues), though functionally differing in respect of the link or pivotal means, would seem to substantially embody the construction found in claim 4 of Clutter, 1,317,431. It is the defendants' third construction, as illustrated by Plaintiff's Exhibit 18 (defendants' catalogue), which it is contended infringes Wagner, 1,476,121. Any difference in positioning or attaching the hauling line to the ditcher stick, rather than to the open end of the scoop, is not, as I see it, a distinction sufficient to avoid infringement; no more than the difference with respect to the scoop attachment or mounting being centrally pivoted in the plaintiff's machine and flexibly mounted in the defendants'. They appear to me to embody substantially the same idea and to serve the same purpose. While the liberal treatment accorded the many claims of the Downie patents might not be extended to the various elements as units, yet the combination of admittedly old elements perform additional functions and accomplish additional results. Any weakness in that respect, it seems to me, is overcome by their novel and useful combination and commercial success.

Some question as to notice was also raised, but I find no omission in that respect to warrant a finding of failure or neglect upon which to base a denial of relief to the plaintiff.

The patents are valid and infringed as to the claims relied upon. A decree may be entered for the plaintiff, with injunction and accounting.

Memorandum on Rehearing Under Order of the Circuit Court of Appeals Entered October 15, 1931.[1]

John M. Zane, Harold W. Norman, and Zane, Morse & Norman, all of Chicago, Ill., and Horace B. Fay, Robert W. Wilson, and Fay, Oberlin & Fay, all of Cleveland, Ohio, for appellants.

F. O. Richey and Richey & Watts, all of Cleveland, Ohio, and Charles R. May and May & Bradshaw, all of Beaver, Pa., for appellee.

JONES, District Judge.

In this case an interlocutory decree entered in January, 1929, was affirmed November 5, 1930, 44 F.(2d) 283. On October 15, 1931, an order was entered by the Circuit Court of Appeals which in effect directed this court to reopen the case for the purpose of receiving and considering testimony regarding only an alleged prior use and the suppression of evidence of one Clutter relating thereto.

It is claimed by the defendants (appellants above) that the prior use of the rigid scoop attachment and drop bottom, for more accurate spotting, occurred at Joplin, Mo., early in 1920; that this was made by Clutter as the result of an earlier idea in 1916; that Downie appropriated Clutter's invention and attempted to pay him for it, and for his silence in respect of the alleged prior use at Joplin, by letting Clutter have a new excavator for half price. Downie's conception date was the summer of 1920. His patent was applied for a year later and issued in October, 1924.

The evidence of prior use and alleged suppression seems to be obscure, indefinite, and unsatisfactory as a basis upon which now to sustain the claims made by the defendant. It appears that Clutter now repudiates his affidavit made April 16, 1925, that the scoop at Joplin was an abandoned experiment of no practical worth. He testified that Downie wrote it, but that he never read it and did not know its contents. This is effectively controverted by the notary before whom he signed and swore to it. If he swore to that affidavit, his present testimony is false. His credibility, in my opinion, has been so far impaired as to effectually destroy its weight. It is idle to suppose that Clutter did not know what he had signed and agreed to with respect to the Joplin use. If he did not, he then was under

---

[1] Appeal from present order dismissed (C. C. A.) 63 F.(2d) 996.

no obligation of silence as far as he was concerned, and therefore under no suppressive influence. The conduct of Clutter, both before and after the Byers' suit, is of such a character that little credibility can be accorded his evidence with respect to the prior use, unless it be adequately corroborated and supported; nor is it easy to understand why Clutter took no steps to secure for himself the benefit of any novel change or attachment which he now believes was his invention. If he was told that Downie had made application for a patent on his improvement, it would seem to have been the natural thing to have raised the question then. It is inconceivable that Clutter, whose brother was an inventor of ditchers, and himself an experienced operator, would have been content to let the time go by for applying for a patent, if he thought he had invented something patentable at Joplin in 1920. In any event, the subsequent shabby treatment of him by Downie, in respect to his account and the repossession of the machines sold to him as the price of his silence, all had transpired before the trial of the present case. Yet it seems to me he did nothing consistent with one then under no obligation to remain silent.

What has been said here is not intended as exculpation of Downie's actions. His anxiety to protect his patent led him into a maze of questionable complications and temporizing, which, in the view I take of the alleged use, were wholly unnecessary, although inexcusable. If the matter lay between Clutter and Downie, the answer would be simple; but the issue is whether the defendants have been deprived of a real defense through the wrongful conduct of both.

A great part of the evidence as to prior use depends upon recollections given in 1930 of incidents occurring in 1920, and are certainly open to serious weaknesses. I am not impressed with the independence of Hazen's recollection without the aid of adequately framed leading questions and Defendant's Exhibit 26, prepared in 1929. The same may be said as to Cummings' and the Culbertson's depositions. Wallower's deposition indicates that his recollection has been somewhat clarified in 1930 over his affidavit of May, 1925, as regards the satisfactory character of the latch mechanism. From such evidence, gathered after the passage of ten years, I find myself unable to visualize a completed and successful invention at Joplin. The Barbed Wire Patent, 143 U. S. 275, 284, 289, 12 S. Ct. 443, 36 L. Ed. 154. The changes there made in the machine were not satisfactory and were not developed, in my opinion, to the

point where they constituted anticipation of Downie. The drop bottom rigid scoop tried out at Joplin was not persisted in, but, on the contrary, it was abandoned five years before the evil complained of was set in motion by the affidavit of April 16, 1925. Symington Company v. National Malleable Castings Company, 250 U. S. 383, 39 S. Ct. 542, 63 L. Ed. 1045; Buser et al. v. Novelty Tufting Machine Co. (C. C. A.) 151 F. 478, 492.

I am more impressed with the testimony of Oliver and the affidavit of Wallower. The defendant at first objected to the introduction of the latter, but later withdrew objections. Oliver testified that, after the skimmer bucket had been converted over to a ditcher bucket, there was difficulty with the latch arrangement; that at first they tried it with the pull rope, with the man standing alongside of the machine, and that the driver on the wagon would sometimes dump it with his hands; that they used a club or stick, or repeated the first operation mentioned. To close the bottom of the bucket, it was let down to the ground; it would not close by momentum swinging. He further testified that the ditcher scoop was not rigid and was not used wherever there was rock to be excavated. The machines thus used were disposed of as skimmer buckets; that is, they were both converted back to their original state. He denied that he told Clutter that Downie was taking out, or had taken out, a patent on the drop bottom ditcher scoop. Wallower's affidavit, under date of May 8, 1925, describes the changes made from the skimmer scoop to the drop bottom rigid scoop. Two machines were so changed and were tried on the job for six weeks. While the falling bottom was advantageous in discharging sticky clay, it was not sufficient to continue the use of the scoops, and the latch mechanism was never reduced to a positively acting and properly constructed form. In March or April, 1920, their use as ditchers was abandoned and both scoops were converted into skimmers and disposed of.

When the conditions of Clutter's alleged rewarded silence were, as he thought, breached by the repossession of his machines, it is difficult to believe that he would longer remain silent, if he had in truth made a prior use at Joplin of his claimed original invention.

I find that the Joplin machine was not satisfactory; that it was never perfected to the point of successfully accomplishing the result claimed for it; that it was an abandoned experiment. My conclusion is that it was not a prior use constituting an anticipa-

tion of the Downie patent. No satisfactory showing of the Joplin use appearing, there was no suppression affecting the rights of the defendant. Upon that phase of the case, however, I find that Downie endeavored to secure for his own protection whatever rights Clutter may have had to the improvement, for the purpose of avoiding any trouble in sustaining his patent, together with the denial of prior use by Clutter. I find that Downie did not successfully accomplish this purpose, that such arrangement as was entered into with Clutter was breached prior to·trial of this case, and that Clutter was under no suppressive influence or obligation at that time respecting his alleged invention or prior use. I find there was no suppression of evidence materially affecting the defendant's rights.