## KEYSTONE DRILLER CO. v. GENERAL EXCAVATOR CO.*

Nos. 34 and 35. Argued October 19, 1933.—Decided December 4, 1933.

* Together with Nos. 36 and 37, *Keystone Driller Co.* v. *Osgood Co.*, certiorari to the Circuit Court of Appeals for the Sixth Circuit.

*Messrs. William H. Boyd* and *Frank O. Richey* for petitioner.

*Mr. Edwin P. Corbett,* with whom *Messrs. Lloyd T. Williams, Edward L. Reed, John H. Mahoney, Wade H. Ellis,* and *Challen B. Ellis* were on the brief, for respondents.

Mr. Justice Butler delivered the opinion of the Court.

The question presented is whether the Circuit Court of Appeals rightly applied the maxim, He who comes into equity must come with clean hands.

Petitioner owns five patents which may be conveniently identified as the Clutter patent and the four Downie

patents.* They all cover devices constituting parts of a ditching machine operated on the principle of a mechanical hoe or mattock. The Clutter patent is basic and the Downie patents are for claimed improvements.

Prior to the commencement of these suits, the petitioner brought a suit in the Eastern Division of the Northern Ohio District against the Byers Machine Company for infringement of the first three patents. January 31, 1929, the court held them valid and infringed and granted injunction. 4 F.Supp. 159. Defendant appealed.

February 9, 1929, petitioner brought these two suits in the Western Division of the same District, one against the General Excavator Company and the other against the Osgood Company. In each, plaintiff alleged infringement by defendant of the same three patents. Plaintiff immediately applied for temporary injunctions to restrain further infringement. The applications were based upon the complaints, supporting affidavits and the pleadings, opinion and decree in the *Byers* case. The court filed a memorandum in which it is stated that, while plaintiff had sustained its patents as against the defenses of an alleged impecunious infringer, defendants were in good faith pressing new defenses that seemed to have merit enough to prevent the application of the rule permitting a temporary injunction merely because of the prior adjudication. The court denied the injunctions but upon condition that defendants give bonds to pay the profits or damages that might be decreed against them. In August, 1929, plaintiff filed supplemental complaints alleging infringement of the other two patents. November 5, 1930, the Circuit Court of Appeals affirmed the decree in the *Byers* case. 44 F. (2d)

---

* They are Clutter Patent No. 1,317,431, issued September 30, 1919; Downie Patent No. 1,511,114, issued October 7, 1924; Downie Patent No. 1,543,250, issued June 23, 1925; Downie Patent No. 1,709,466, issued April 16, 1929; Downie Patent No. 1,716,432, issued June 11, 1929.

283. Then these cases were consolidated for trial. Plaintiff withdrew its claim that the Osgood Company infringed the last patent. The district court held the Clutter patent and the first and fourth Downie patents valid and infringed, the second Downie not infringed and the third Downie patent invalid.

At the trial of these cases, defendants introduced evidence that plaintiff did not come into court with clean hands. It was sufficient to sustain findings of fact made by both courts, in substance as follows: June 27, 1921, Downie filed the application on which was issued his first patent. In the preceding winter he had learned of a possible prior use at Joplin, Missouri, by Bernard R. Clutter. The latter is a brother of the patentee of the Clutter patent and had then recently been in the service of plaintiff as demonstrator in the use of ditching machinery. Downie made the application and assigned his rights to plaintiff, of which he was secretary and general manager. The patent issued and plaintiff, contemplating the bringing of an infringement suit thereon against the Byers Machine Company, was advised that the prior use at Joplin was sufficient to cast doubt upon the validity of the patent. Downie then went to Bernard R. Clutter and for valuable considerations—which are described in the opinion of the Circuit Court of Appeals, 62 F. (2d) 48, and need not be detailed here—obtained from Clutter an affidavit prepared by Downie to the effect that Clutter's use of the device was an abandoned experiment, and also obtained Clutter's agreement to assign plaintiff any rights he might have as inventor, to keep secret the details of the prior use and, so far as he was able, to suppress the evidence. No proof of such use was produced at the trial of that case. The defendants in these suits took Clutter's deposition early in 1930. He did not then disclose his arrangement with plaintiff for concealment of evidence in the *Byers* case. Their suspicions being

aroused by his testimony, defendants in the latter part of that year again examined him and secured facts upon which they were able to compel the plaintiff to furnish the details of the corrupt transaction.

The district court characterized Downie's conduct as highly reprehensible and found that his purpose was to keep Clutter silent. But it also found that the plaintiff did nothing to suppress evidence in these cases. It expressed the opinion that matters pertaining to the motion for preliminary injunction had no bearing upon the merits, and that plaintiff's use of the Byers decree was not a fraud upon the court. And it ruled the maxim did not apply. The Circuit Court of Appeals held the contrary, reversed the decrees of the district court and remanded the cases with instructions to dismiss the complaints without prejudice. 62 F. (2d) 48. 64 F. (2d) 39.

Plaintiff contends that the maxim does not apply unless the wrongful conduct is directly connected with and material to the matter in litigation and that, where more than one cause is joined in a bill and plaintiff is shown to have come with unclean hands in respect of only one of them, the others will not be dismissed.

The meaning and proper application of the maxim are to be considered. As authoritatively expounded, the words and the reasons upon which it rests extend to the party seeking relief in equity. "It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have a standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands. He must be frank and fair with the court, nothing about the case under consideration should be guarded, but everything that tends to a full and fair determination of the matters in controversy should be placed before the court." Story's Equity Jurisprudence, 14th ed., § 98. The governing principle is "that

whenever a party who, as *actor*, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." Pomeroy, Equity Jurisprudence, 4th ed., § 397. This Court has declared: " It is a principle in chancery, that he who asks relief must have acted in good faith. The equitable powers of this court can never be exerted in behalf of one who has acted fraudulently or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abetter of iniquity." *Bein* v. *Heath,* 6 How. 228, 247. And again: "A court of equity acts only when and as conscience commands, and if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity." *Deweese* v. *Reinhard,* 165 U.S. 386, 390.

But courts of equity do not make the quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication. Story, *id.,* § 100. Pomeroy, *id.,* § 399. They apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice. They are not bound by formula or restrained

by any limitation that tends to trammel the free and just exercise of discretion.

Neither the plaintiff's corruption of Clutter in respect of the first Downie patent nor its use in these cases of the Byers decree can fairly be deemed to be unconnected with causes of action based on the other patents.

Its bills show the devices covered by the five patents to be important, if not essential, parts of the same machine. And its claims warrant the inference that each supplements the others. This is made plain by mere reference to the things patented. The Clutter device is for the hoe or mattock arrangement. The first Downie is for an improvement designed, by a drop bottom scoop and other means, to permit more accurate dumping. The second Downie had for its main purpose the elimination of a " blind spot " in the unloading operation. The third Downie makes possible and convenient the use of scoops of different widths upon the same machine. The fourth Downie device consists of detachable rake teeth for a scoop.

Had the corruption of Clutter been disclosed at the trial of the *Byers* case, the court undoubtedly would have been warranted in holding it sufficient to require dismissal of the cause of action there alleged for the infringement of the Downie patent. Promptly after the decision in that case plaintiff brought these suits and immediately applied for injunctions *pendente lite*. It used the decree of validity there obtained in support, if not indeed as the basis, of its applications. And plaintiff's misconduct in the Byers suit remaining undisclosed, that decree was given weight on the motions for preliminary injunctions. *Leeds & Catlin Co.* v. *Victor Talking Mach. Co.,* 213 U.S. 301, 312. 1 Walker on Patents (6th ed.), § 704, *et seq.* As the litigation was to continue for years and the use of the devices in question was essential to the ditching machinery, it is clear that the injunctions would have been a burdensome

detriment to defendants. The amounts of the bonds required in lieu of injunctions attest the importance of the advantage obtained by use of the decree. While it is not found, as reasonably it may be inferred from the circumstances, that from the beginning it was plaintiff's intention through suppression of Clutter's evidence to obtain decree in the *Byers* case for use in subsequent infringement suits against these defendants and others, it does clearly appear that the plaintiff made the *Byers* case a part of its preparation in these suits. The use actually made of that decree is sufficient to show that plaintiff did not come with clean hands in respect of any cause of action in these cases.

The relation between the device covered by the first Downie patent and those covered by the other patents, taken in connection with the use to which plaintiff put the Byers decree, is amply sufficient to bring these cases within the maxim. *Conard* v. *Nicoll,* 4 Pet. 291, 297. *Clarke* v. *White,* 12 Pet. 178, 193. *Carrington* v. *The Ann Pratt,* 18 How. 63, 67. *Kitchen* v. *Rayburn,* 19 Wall. 254, 263.

*Decrees affirmed.*