**HENKELS & McCOY, INC., Plaintiff,**

v.

**Luther V. ELKIN, Defendant.**

**Civ. A. No. 68–879.**

United States District Court,
W. D. Pennsylvania.

Aug. 26, 1970.

Walter J. Blenko, Jr., Robert D. Yeager, Blenko, Leonard & Buell, Pittsburgh, Pa., for plaintiff.

John M. Webb, David C. Hanson, Webb, Burden, Robinson & Webb, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

This is an action for an injunction against defendant's alleged infringement of United States Patent No. 3,307,363 (the Kinnan patent) and for an accounting. Henkels and McCoy, Inc., a Pennsylvania corporation with its main office in Blue Bell, Pennsylvania is the owner, by virtue of an assignment, of the Kinnan patent. The defendant is a resident of Pennsylvania doing business under the fictitious name of Elkin Farm Equipment Company. This court has jurisdiction of the parties and subject matter under 28 U.S.C. § 1338(a). The issues raised by the pleadings, the pretrial and the evidence are validity and enforceability of the Kinnan patent and infringement by defendant. It is our opinion that judgment should be entered in favor of the defendant.

The machine disclosed and claimed in the Kinnan patent is an apparatus for laying flexible cable underground by use of the plowing technique. Basically, the plowing technique involves the use of a plow blade drawn by a vehicle through the surface of the ground at a particular depth, thereby cutting a slit in the ground. Flexible cable, specially manufactured to withstand exposure to burial in the ground is fed through a chute, or cable shoe, attached to the rear of the plow blade and laid in the slit cut by the plow as it progresses.

The Kinnan machine, embodied in claims 1, 2, 5 and 6 of the Kinnan patent, is a combination of a cable plow hingedly mounted to one end of an elongated beam, the other end of which is attached by a pivot means to the forward end of a road grader or similar elongated, wheeled vehicle. The beam extends along one side of the grader. Through the use of hydraulic cylinders attached to the frame of the road grader and, on the other hand, to the beam, the operator may raise and lower the beam (vertical

cylinder), move it to the side of the grader (horizontal cylinder), and turn the beam upon its longitudinal axis (cant cylinder). Such movement of the beam results in corresponding movement of the cable plow which is attached to the beam. Turning the beam upon its longitudinal axis results in canting of the cable plow, that is, changing the angle between the cable plow and the surface of the road on which the grader is travelling.

In operation the cable plow is lowered into a hole in the berm at the side of a road by means of the vertical cylinder, and it is drawn through the ground, either all the grader's wheels remaining on the paved surface or two of the wheels travelling on the berm. Cable is fed into the slit made in the berm at a desired depth along the side of the road, while the grader and plow proceed forward. It is frequently necessary that an additional vehicle be used to help pull the cable plow and grader and to compensate for side draft, the tendency of the side-mounted assembly to draw the grader off course. When the plowing is finished, when a reel of cable runs out, and when the position of the cable plow has to be changed by reason of changed conditions of the terrain, the cable plow may be raised out of the ground and reinserted after any necessary changes are made. Such a change is necessary where the cable is to be placed in the ground on the other side of guardrails which may be erected on or near the berm of the paved road. In this case the beam is raised and extended further to the side so that the cable plow becomes positioned on the opposite side of the guardrail. The cable plow is reinserted into the ground and the plowing continues.

Other changes are required where cable is to be plowed into the side of a slope along the side of a road. In such cases, the cable plow is canted so that the plow blade becomes perpendicular to the plane of the slope while the grader remains on, or slightly off, the paved roadway. Other obstacles such as sign-posts and culverts require similar changes in the positioning of the cable plow.

Defendant contends that the Kinnan patent is invalid by reason of overclaiming by the patentee and obviousness.

The pertinent claims read:

"1. Apparatus for laying continuous lineal material in combination with a vehicle including an elongated chassis having a forward end and a rearward end, said apparatus comprising;

an elongated member carried by said chassis laterally offset from the longitudinal axis thereof and substantially within the length of said chassis,

said member trailing rearwardly relative to the forward end of said chassis,

pivot means disposed rearwardly adjacent the forward end of said chassis and pivotally mounting the forward end of said member thereto allowing lateral and downward swinging movement of said member,

a cable plow hingedly attached to the opposite end of said member, and

hydraulic cylinders coupled with said member and with said vehicle for imparting swinging movement to said member whereby said cable plow may be selectively positioned relative to and offset from the longitudinal axis of said chassis.

2. The invention as claimed in claim 1 wherein said pivot means further includes means allowing said elongated member to move about its longitudinal axis and said hydraulic cylinders include a cylinder for imparting such movement to said member.

" * * *

"5. The apparatus as claimed in claim 1 wherein said pivot means mounts said member to said chassis for movement of said member about a substantially horizontal axis, an upright axis and a second horizontal axis, the later axis being substantially par-

allel to the axis of vehicle movement and said hydraulic cylinders being operable to position said member about each axis whereby said cable plow carried by said member may be placed respectively at a selected depth and distance from one side of the axis of said chassis and in a transversely inclined relationship to the ground surface.

6. The invention as claimed in claim 1 wherein said vehicle is supported by pneumatic tires some of which are steerable for travel along paved surfaces without imparting damage to same."

## OVERCLAIMING

Defendant's contention of invalidity by reason of overclaiming is based on the absence of a single claim embodying all elements of the Kinnan machine. Since the Kinnan machine is useful only in combination with a wheeled vehicle and since all claims other than claim 6 are not limited to use in combination with a wheeled vehicle, defendant contends that those claims are invalid for overclaiming. Similarly, defendant contends that all claims other than claim 2, which provides for the cant effect through use of a hydraulic cylinder, are invalid since they are not limited to a machine with a cant cylinder. It is not necessary that each claim include all elements necessary to make a complete operative device. Deering v. Winona Harvester Works, 155 U.S. 286, 15 S.Ct. 118, 39 L.Ed. 153 (1945); Pursche v. Atlas Scraper and Engineering Co., 300 F.2d 467 (9th Cir. 1961).

"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112.

It is undisputed that the specification of the Kinnan patent limits the use of the Kinnan machine to use upon a wheeled vehicle, and that the cant cylinder is described in the specification.

" 'All that is required is that each claim covers a patentable invention. A complete machine may embody numerous inventions, the number of which depends on how many combinations and permutations of elements, each patentable per se, are included in the entire machine. A claim, therefore, need not include elements not essential to the definition of the particular invention that claim is drawn to cover.' " Pursche v. Atlas Scraper and Engineering Co., supra, at 476, quoting from Ellis' Patent Claims, p. 168.

Accordingly, it is our opinion that the defense of overclaiming is not available to the defendant.

## OBVIOUSNESS

Section 103 of Title 35, U.S.C. provides:

"A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

In Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court outlined the applicable test in determining obviousness as follows:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give

light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." Graham v. John Deere Co., *supra*, at pp. 17–18, 86 S.Ct. at p. 694.

The application for the Kinnan patent was filed June 28, 1965. The date of filing is the date of invention for purposes of determining what art is prior art unless the patentee proves an earlier date by strong and convincing evidence. Charles Hunnicutt Co. v. A. B. Gaston Co., 218 F. 177 (3d Cir. 1914). Plaintiff has submitted such evidence with respect to claims 1, 5 and 6. Plaintiff's exhibits 67 and 68 are photographs, printed in August, 1964, of a machine similar to the Kinnan machine. These photographs demonstrate all aspects of the Kinnan machine other than the canting cylinder. Frank Kinnan testified that he built the machine shown in plaintiff's exhibits 67 and 68 in July, 1964 and that the photograph was taken later in that month. We find that the invention of the devices claimed in claims 1, 5 and 6 of the Kinnan patent occurred in July, 1964. The date of invention of the device claimed in claim 2 of the Kinnan patent is June 28, 1965. Therefore, the Nichols patent, No. 3,308,628, application filed October 1, 1964, and the October 1, 1964, publication describing the ATECO plow, defendant's exhibit 7, are not prior art with respect to claims 1, 5 and 6, and neither Nichols nor ATECO teaches the use of a cant cylinder so as to be pertinent prior art to claim 2.

The prior art embraces all the elements found in the Kinnan patent. It is not disputed that this is a combination patent. The use of an elongated chassis for side-mounting a cable plow is disclosed by the Westfall machine (unpatented) which Kinnan observed prior to building his machine. Defendant's exhibits 10, 11. Wheeled vehicles used with cable plows were disclosed in the Elkin D17 machine (unpatented). Pictures of this wheeled vehicle were published in 1961. Defendant's exhibits 5, 6. The Westfall plow also involved the use of a wheeled vehicle. Beams used to support cable plows were disclosed in Ryan, Patent No. 2,647,758, issued in 1953; Lisle, Patent No. 2,900,931, issued in 1959; and in the Elkin D17 machine. Hydraulic cylinders attached so as to impart vertical movement of the cable plow were disclosed in Perkins, Patent No. 2,766,536, issued October 16, 1956; Kelley, Patent No. 3,170,300, filed August 8, 1960; Tibbits, Patent No. 3,175,-368, filed September 26, 1960; Heiberg, Patent No. 3,232,358, filed March 21, 1963; Ryan's 1953 patent; Lisle; Ryan, Patent No. 2,943,583, issued July 5, 1960; Lang, Patent No. 3,060,696, issued October 30, 1962; the Westfall machine; and the Elkin D17. The use of hydraulic cylinders for horizontal or side to side movement of the plow was disclosed in Kelley, Tibbits, Heiberg, and the Westfall machine. Canting of the plow blade by means of hydraulic cylinders was disclosed by Ryan's 1953 patent and the Elkin D17. A pivot means allowing vertical and horizontal movement of the cable plow attachment is disclosed in Tibbits.

The differences between the prior art and the claims at issue are differences of arrangement and placement of the various elements of the prior art. Most of the prior art machines involved cable plows mounted on beams or separate trailers which were disposed to the rear of the vehicle. The Westfall machine is the only prior art reference to mounting a cable plow on a support disposed laterally from the frame of the vehicle. The Westfall plow was attached to a mounting which was attached in front of and behind the rear axle of the vehicle. Although the Westfall plow could be raised and lowered and moved laterally, its range of motion was relatively limited. It had no provision for canting the plow.

The range of motion of rear mounted plows in the prior art was much greater. See the Ryan (1953), Lisle, Ryan (1960), Kelley, Tibbits and Heiberg patents.

Canting on both the Ryan (1953) machine and the Elkin D17 was effected through the use of two hydraulic cylinders, located on either side of the cable plow, extending down from elevated points above the cable plow. When these two cylinders were activated in conjunction with one another, they would either raise or lower the plow. If one cylinder were extended as the other retracted, the cable plow and its support would be canted. The lateral movement of Kelley and Tibbits was also effected through the extension of one hydraulic cylinder and the retraction of a second hydraulic cylinder. On these machines the cable plow could be shifted from slightly outside the right side of the vehicle to slightly outside the left side.

The novel mounting of a cable plow on the end of an elongated beam which, in turn, is mounted on a side of the front of the vehicle allows for the same relatively unlimited lateral movement of the plow, but since the plow is disposed to one side of the vehicle, it can be moved much farther from that side than either Kelley or Tibbits and also Westfall. Kinnan's mounting also makes it possible to effect vertical movement, lateral movement or canting with one hydraulic cylinder for each of these functions, whereas on prior art machines lateral movement and canting of the cable plow each required the use of two hydraulic cylinders.

The level of ordinary skill in the cable plowing art at the time of the Kinnan invention included the ability to mount cable plows on the ends of beams, the ability to use pivot means for connecting a cable plow's support to a vehicle, the use of elongated rubber tired vehicles and the ability to maneuver the cable plow vertically and laterally and to cant the cable plow by means of hydraulic cylinders.

■ Against this background, it is our opinion that the subject matter of the Kinnan invention, as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the cable plowing art. The positioning of the cable plow's support, the beam, at the side of a vehicle was "but a matter of mechanical skill * * *." Toro Manufacturing Corp. v. Jacobsen Manufacturing Co., 357 F.2d 901, 904 (7th Cir. 1966). Although Kinnan's arrangement of the cable plow with respect to the vehicle, together with the various hydraulic cylinders, resulted in increased utility, such as the ability to extend the cable plow farther to the side of the vehicle and on the other sides of guardrails, the combination of old elements employed by Kinnan took on no new quality and produced "no new or different function or operation than that theretofore performed or produced by them * * *." Great A. & P. Tea Co. v. Supermarket Corp., 340 U.S. 147, 151, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). Nor was there any unexpected result from Kinnan's combination. *Cf.* United States v. Adams, 383 U.S. 39, 52, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

■ The Westfall plow and the Lisle, Lang and Ryan patents were not listed by the Patent Office as having been considered in the processing of the Kinnan application. Although 35 U.S.C. § 282 creates a presumption of a patent's validity, this presumption is weakened when pertinent prior art was not considered by the Patent Office. B. F. Goodrich Company v. Rubber Latex Products, Inc., 400 F.2d 401, 405 (6th Cir. 1968). This weakened presumption has been overcome by the evidence of obviousness in this case.

■ Evidence of the commercial success of the Kinnan machine is convincing, but such a secondary consideration is not sufficient to tip the scales of patentability. Anderson's Black Rock v. Pavement Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); Graham v. John Deere Co., *supra.*[1]

---

I. Plaintiff's evidence of a long felt need in the industry for a device such as

Kinnan's is not convincing, and we find that no such long felt need existed.

Although we have found the Kinnan invention to have been "obvious" and not patentable under 35 U.S.C. § 103, we shall resolve the other factual issues presented.

## UNENFORCEABILITY

On April 18, 1966, there was filed with the Patent Office a Petition to Make Special the application for the Kinnan patent pursuant to which Kinnan stated by affidavit that one Delbert Keifer was, without authority, using an infringing machine in competition with Kinnan.[2] Defendant contends that this statement was false. In his deposition, admitted in evidence as defendant's exhibit 54, Keifer stated that Kinnan gave him permission to build a machine similar to the Kinnan machine. No written authorization was given and Keifer could not recall the specifics of the conversation with Kinnan. Keifer's testimony was corroborated by two witnesses who testified regarding alleged admissions by Kinnan but all of this evidence was vague, and one of the corroborating witnesses, Truman D. Winnett, was biased against the plaintiff. Kinnan denied giving Keifer authority to use a machine similar to the Kinnan machine. We find that the affidavit filed by Kinnan was not false.

Even had the affidavit been false, however, the statement of Kinnan would not have rendered the Kinnan patent unenforceable because it was not material to the granting of the patent. A patent can be held unenforceable only if the applicant or his attorneys have been guilty of wrongful acts of commission or omission which were material to the granting of the patent—acts but for which the patent would not have issued. Waterman-Bic Pen Corp. v. W. A. Sheaffer Pen Co. Div. of Tex., 267 F.Supp. 849, 856 (D.Del.1967); *Cf.* Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293

(1933). Defendant contends that had the Kinnan application not been made special, the patent examiner would have rejected Kinnan's application in the light of the Nichols patent which, because of Kinnan's affidavit, was not before the examiner when Kinnan's patent issued. Nichols is inapplicable to the Kinnan patent as prior art.[3] Therefore the patent examiner would not have rejected Kinnan's claims on the basis of Nichols. We conclude then that if the Kinnan patent were valid it would not be unenforceable by reason of fraud on the Patent Office.

## INFRINGEMENT

It is undisputed, and we find, that the defendant's accused machine literally corresponds to the pertinent claims of the Kinnan patent in all respects except two. Defendant contends that since the elongated beam of the accused machine is mounted on the centerline of the vehicle, that it is not "laterally offset from the longitudinal axis * * *" of the vehicle, as is required by claim 1 of the Kinnan patent. The "laterally offset" language of claim 1 refers, however, to the beam and not to the mounting point. Defendant admitted on cross examination that the beam on the accused machine is laterally offset from the longitudinal axis of the vehicle. (T., p. 481.) In any event the accused machine is the equivalent, in this respect, of the Kinnan patent. Defendant's contention that the doctrine of equivalents may not be invoked by plaintiff for the reason that claim 1 was narrowed to provide for the "laterally offset" beam in order to avoid prior art is not supported by the record. *Cf.* Westinghouse Electric Corp. v. Hanovia Chem. & Mfg. Co., 179 F.2d 293, 296–297 (3d Cir. 1949). There is no indication that the rewriting of claim 1 was to avoid any prior art or that it was for any reason other than to place Kinnan's application in better form.

2. A prior petition to make special was denied by the Patent Office on March 9, 1966.

3. See discussion on date of invention, above.

The defendant also contends that the term "pivot means" in claim 1 must be limited to the use of a universal joint; that since the accused does not have a universal joint, but rather a ball and socket, it does not infringe on any of the Kinnan claims. Kinnan's unsuccessful attempt, before the Patent Office, to have removed from the specification the word "universal" in no way limits the claim language. The ball and socket employed by defendant literally conforms to the wording of claim 1 of the Kinnan patent. We conclude therefore that, if the Kinnan patent were not invalid under 35 U.S.C. § 103, claims 1, 2, 5 and 6 would be infringed by the accused machine.

This opinion shall be deemed to embody findings of fact and conclusions of law required by Rule 52, Fed.R.Civ.P.

An appropriate order will be entered.