Decided November 8, 1988

IN THE UNITED STATES DISTRICT
FOR THE
NORTHERN MARIANA ISLANDS

## APPELLATE DIVISION

HUGO LOREN, ) DCA NO. 87-9019
 ) CTC NO. 86-644
 Plaintiff/Appellant, )
 )
 vs. ) OPINION
 )
E'SAIPAN MOTORS, INC., )
 )
 Defendant/Appellee. )
_____ )

BEFORE: LAURETA, KING*, District Judges and HEFNER,**
 Designated Judge

HEFNER, Judge:

### FACTS

 The facts as found by the trial court are not challenged on appeal. In late 1983 defendant Ray Alvarez (Alvarez) approached Servie Regis (Regis) of the Nor-Mar Employment Agency for the purpose of hiring an outboard motor mechanic. Later Regis advised Alvarez that he had located an outboard motor mechanic in the Philippines. After reviewing the "Bio-data" provided by Regis, Alvarez decided to hire the

---

 *The Honorable Samuel P. King, Senior U.S. District Court Judge for the District of Hawaii, sitting by designation.

 **The Honorable Robert A. Hefner, Chief Judge, Commonwealth Trial Court, sitting by designation.

plaintiff, Hugo Loren (Loren). In January, 1984, Loren signed an employment contract stating that he would work as an outboard motor mechanic at the rate of $2.50 per hour.

Loren arrived on Saipan on April 9, 1984. Almost immediately Loren began work as an outboard motor mechanic but it soon became apparent to Alvarez that Loren was not qualified to perform this function. Subsequently, a meeting was held between Alvarez, Regis and Loren wherein the parties concluded that Loren was not qualified to act as an outboard motor mechanic and Regis would try to locate a more qualified one. Meanwhile, the parties agreed that Loren would remain on the job as a general helper and cleaner. Apparently, Loren begged Alvarez to let him stay as he did not want to return to the Philippines. This change in work assignments between Alvarez and Loren was not entered into the contract and was never reported to or approved by the Chief of Labor as required by 3 CMC § 4436.[1]/

---

[1]/
3 CMC § 4436 was amended in 1987, however, for the time period encompassed by the facts in this case, this section read as follows:

§4436. Transfer of Employment.

 (a) A non-resident worker may transfer from one employer to another or one job to another subject to approval by the Chief pursuant to regulation.

 (b) The Director shall promulgate regulations for non-resident worker job or employer transfer. Such regulations shall include but not be limited to:

 (1) Requirement of a $200 transfer fee by the employer regardless of whether transfer is

By November of 1984 Alvarez had hired another outboard motor mechanic and informed Loren that he would be repatriated to the Philippines. Loren begged to stay and Alvarez agreed to allow Loren to continue working doing different jobs at the

<hr>

from one job to another for the same employer, or between employers;

(2) A requirement of compliance by the non-resident worker with all provisions of this Chapter applicable to his or her prior employment.

(c) The transfer regulations promulgated pursuant to subdivision (b) may include occupational categories ineligible for transfer and such other provisions as the Director may reasonably deem necessary to implement the purposes of this Chapter.

(d) Upon written application of an employer or non-resident worker the Chief shall approve or deny the transfer within 14 working days.

(1) If the transfer is denied the employer and worker shall be advised of the denial in writing. This advisement shall include the cause of denying transfer.

(2) If the transfer is approved, the Chief shall renew the certificate and transmit a copy thereof to the immigration authorities, along with any pertinent change in the worker's status, pursuant to Section 4435(b).

(3) Upon receipt of a renewed certificate the immigration authority shall renew or reissue the appropriate entry documents pursuant to Section 4435(c).

(e) Nothing under this Chapter including issuance of an initial certificate shall give rise to any presumption in favor of or claim of right to transfer.

reduced salary of $360 per month. Again, this change in salary and employment was never approved by the Chief of Labor.

In January, 1985 the original contract between Alvarez and Loren expired and a new one was signed and approved by Labor. The contract stated that Loren would work as a mechanic for $400 per month but, in fact, Loren continued to work as a general helper.

At the end of 1985, Loren and Alvarez entered into a new contract stating again that Loren would work as a mechanic for $400 per month. However, Loren continued to work as a general helper, not as a mechanic as per the contract approved by the Chief of Labor.

By mid-1986 Loren's work performance had become unacceptable to Alvarez and he was given 30 days notice of termination and was terminated on July 15, 1986. Upon termination, Loren was given a return ticket to the Philippines and the balance of his salary.

Subsequently, Loren filed suit against Alvarez claiming overtime payments for all the Saturdays he worked. During the time Loren worked for Alvarez he worked eight hours a day, six days per week and was absent only two Saturdays. He was paid a fix d salary and no overtime.

The trial court found the contracts approved by Labor to be void and unenforceable due to the fact that the work done by Loren was not in accordance with those contracts and decided to leave the parties as they stood. The court further found

that the separate agreement by which Loren would work as a general helper was illegal and refused to assist in enforcing any part of it.

## ILLEGALITY OF CONTRACT

Initially, it should be noted that neither party raised the issue of the legality of the three employment contracts at issue. The trial court discussed and determined the illegality of these contracts sua sponte.

Rule 8(c) of the Commonwealth Rules of Civil Procedure provides that the defense of illegality must be affirmatively pled. Generally, failure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case. 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1278, at 339 (1969); Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir. 1984). However, the court has a duty sua sponte to raise the issue of the illegality of a contract in the interest of the administration of justice. California Pacific Bank v. Small Business Administration, 557 F.2d 218, 223 (9th Cir. 1977). Thus, the trial court acted properly in addressing the issue of the contracts' legality despite the fact that appellee did not plead illegality as an affirmative defense.

The trial court found that appellant and appellee entered into an "illegal" agreement as the work performed by appellant did not comply with the terms of the various contracts approved by the Chief of Labor. Citing 3 CMC §§4436 and 4437(e).

**570**

3 CMC §4436 establishes the procedure by which a non-resident worker may transfer from one job to another but does not address the issue of any failure to comply with those procedures. Failure to obtain the approval of the Chief of Labor prior to a job transfer is covered by 3 CMC §4437(e) which reads as follows:

> e) No employer or nonresident worker shall execute any contract, make any other agreement, or change any existing contract, in writing or otherwise, regarding the employment of such worker, without the approval of the Chief, and no nonresident worker shall perform labor or services within the Commonwealth except pursuant to an approved contract or an approved change to this contract. Any non-resident employment contract or change thereto which has not been approved by the Chief or which violates any provisions of this act shall in the discretion of the Chief:
>
> 1) Be voidable
>
> 2) Be grounds for certificate revocation
>
> 3) Be grounds to disqualify an employer from further use of any non-resident labor.

An agreement which cannot be performed without a violation of the law is illegal and void. Yankton Sioux Tribe v. United States, 272 U.S. 351, 358, 47 S.Ct. 142, 144, 71 L.Ed. 294 (1926). In this case, ratification of any contract not previously approved by the Chief of Labor is clearly discretionary. Thus, the contracts between the parties here are not void but only voidable in the discretion of the Chief

**571**

of Labor. Likewise, the trial court erred in finding that the agreements between the appellant and appellee were "illegal" since the performance of these agreements was not a legal impossibility pursuant to 3 CMC §4437(e).

Be that as it may, we deem it necessary to continue our analysis following the trial court's premise that the agreements in this case were "illegal" and therefore unenforceable.

## ENFORCEMENT OF THE CONTRACT

Although a court will not ordinarily allow recovery on an illegal contract, Pacific Telephone and Telegraph Co. v. Telecommunications Corp., 649 F.2d 1315, 1319 (9th Cir. 1981), the illegality of a contract does not automatically render it unenforceable. California Pacific Bank v. Small Business Administration, supra, 557 F.2d at 223. Appellant now argues that the contract should be enforced because 1) the parties are not in pari delicto and 2) public policy favors enforcement.

### 1. Relative Culpability

The in pari delicto doctrine emanates from the Latin expression, "in pari delicto est conditio defendentis (In a case of equal or mutual fault ... the position of the [defending party] is the better one). Black's Law Dictionary 711 (5th ed. 1979). The doctrine is a corollary of the unclean hands maxim, the principal difference being that the in pari delicto doctrine technically applies only when the plaintiff's fault is substantially equal to the defendants. Dahl v. Pinter, 787 F.2d 985, 988 (5th Cir. 1986).

572

Not any act suffices to bring into play the doctrine of in pari delicto. As the Supreme Court pointed out in Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933), the doctrine applies "only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." Id. at 245, 54 S.Ct. at 147. The in pari delicto maxim operates against conduct which is contrary to the dictates of good conscience or fair dealing. 2 Pomeroy, Equity Jurisprudence, 92-94 (5th ed. 1941); United States v. Second National Bank of North Miami, 502 F.2d 535, 548 (5th Cir. 1974), cert. denied, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975). Moreover, the in pari delicto maxim refers "to willful misconduct rather than to merely negligent conduct. The improper conduct which falls within the maxim must involve intention as opposed to an inadvertent act or a misapprehension of legal rights; the conduct must be morally reprehensible as to known facts." 30 C.J.S. Equity § 95, at 1022 (1965); (citations omitted); Preload Technology, Inc. v. A.B. & J. Construction Co., 696 F.2d 1080 (5th Cir. 1983).

The in pari delicto defense is grounded on two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality. In its classic formulation, the in pari delicto defense was narrowly limited to situations where the

573

plaintiff truly bore at least substantially equal responsibility for his injury, because "in cases where both parties are _in delicto_, concurring in an illegal act, it does not always follow that they stand _in pari delicto_; for there may be, and often are, very different degrees in their guilt." Bateman Eichler, Hill Richards; Inc. v. Berner, 472 U.S. 299, 306-307, 105 S.Ct. 2622, 2626-27, 86 L.Ed.2d 215 (1985), quoting 1 J.Story, Equity Jurisprudence 304-305 (13th ed. 1886) (Story).

The facts before us indicate very different degrees of "guilt" between appellant and appellee vis-a-vis the 1984, 1985 and 1986 employment contracts. Appellee in this case failed to have appellant's change in employment status from mechanic to general helper registered with the Chief of Labor pursuant to 3 CMC § 4436. In doing so, appellee successfully evaded payment of the $200 fee required by that section for the transfer of employees from one work assignment to another. Similarly, appellee also paid appellant lower wages than were called for in the 1984 contract without the approval of that change in salary by the Chief of Labor. Finally, and of vital importance to our inquiry here, the facts state that appellee actually submitted two employment contracts to Labor for 1985 and 1986 which falsely represented the scope of appellant's duties, allowing appellee to continue to avoid payment of $200 transfer fee and continue to employ appellant without advertising his position as a general helper in order to ascertain if a resident worker was capable of filling that position. See, 3 CMC §4413

574

(expressing policy that resident workers shall be given preference in employment in the Commonwealth).

On the other hand, appellant's lone transgression was that he "begged" appellee to let him stay on and work doing odd jobs. The important difference here is that while it is difficult to construe appellant's begging as willful misconduct amounting to an affirmatively illegal act, it is clear from the findings of the trial court that appellee did willfully violate the dictates 3 CMC §4436 by not only transferring appellant to another job without paying the required statutory fee but compounded this offense by filing two subsequent contracts with the Chief of Labor which expressly misrepresented the scope of appellant's duties. Based upon the facts before us it is evident that the relative culpability of the parties in this case is substantially different; appellee's conduct being far more egregious than appellant's. Therefore, it cannot be said that the parties are in pari delicto and should be left where the court found them.

2. Public Policy

Courts will enforce legal agreements where public policy will be served thereby whether or not the parties are in pari delicto. Restatement Contracts 2d § 178. One policy behind the refusal of courts to grant relief to either party to an illegal agreement is that such refusal tends to reduce the number of such transactions to a minimum. Steele v. Drummond, 275 U.S. 199, 205, 48 S.Ct. 53, 54 (1927). The more plainly

575

parties understand that when they enter into contracts of this nature they place themselves outside the protection of the law, so far as that protection consists in aiding them to enforce such contracts, the less inclined they will be to enter into them. McMullen v. Hoffman, 174 U.S. 639, 669-670, 19 S.Ct. 839, 850-851, 43 L.Ed. 1117 (1899). However, it is inappropriate to invoke broad common-law barriers to relief, such as the in pari delicto doctrine, where a private lawsuit serves important public purposes. Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 138, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968).

In this instance, it can be anticipated that a rule of law dictating that all "illegal" contracts between employers and nonresident workers be unenforcable would not serve to minimize the occurrence of these contracts or discourage employers from entering into them. Quite the opposite; if employers could avoid paying wages by merely transferring an employee without proper approval or otherwise altering their contracts in order to render them nullities, such illegal contracts might become the rule rather than the exception.

## CONCLUSION

It is the law of the Commonwealth that where the performing party is not in pari delicto, or not equally in the wrong with the other party, the performing party is entitled to restitution. Taimanao v. Young, 2 CR 286, 288 (D.C. App.Div. 1985).

**576**

4 CMC § 9222 indicates that any employee working in excess of 40 hours per week shall be entitled to compensation equal to one and one-half times the regular rate of pay at which he is employed for all hours in excess of 40 hours per week.

Computations indicate that appellant was employed by appellee for 118 weeks. Of these 118 weeks, there were only two that the appellant did not work in excess of 40 hours. Thus, the total number of hours the appellant is entitled to overtime is 928 hours (116 x 8). The one and one-half overtime is at the regular rate at which he is employed, 4 CMC § 9222, but which could not be less than the minimum wage level set forth in 4 CMC § 9221. The record before us is not clear as to the actual wages paid for the 118 weeks. Additionally, a remand is required to determine if the employer's failure to pay the overtime wage was willful pursuant to 4 CMC § 9243 which may or may not trigger the liquidated damage provision. The extent of the trial court's inquiry into this matter is set forth in Elayda v. J & I Construction, 1 CR 1025, 1040 (D.C. App.Div. 1984). Thus, the trial court must find if Alvarez knew or should have known that there was a minimum wage and hour law in the Commonwealth. If such is the case, liquidated damages must be assessed as well as attorney fees. 4 CMC § 9244(b).

The decision of the trial court is REVERSED and this matter is REMANDED with instructions that the trial court:

1. Find the rates of pay paid to the appellant by the appellee during the time of his employment;

2. Compute the overtime wages due appellant;

3. Find whether the failure to pay overtime wages was willful and, if so, assess liquidated damages and award attorney fees,

Dated: _____NOV. 0 8 1988_____

_____
Alfred A. Laureta, District Judge

_____
Samuel P. King, District Judge

_____
Robert A. Hefner, Designated District Judge

578